In the Matter of FIORELLO H. LAGUARDIA, as Mayor of the City of New York, Appellant, against ALFRED E. SMITH, JR., et al., Constituting a Special Committee of the Council of the City of New York, Respondents.

Argued January 21, 1942; decided March 19, 1942.

*Fiorello H. LaGuardia,* in person, and *William C. Chanler, Corporation Counsel (Robert H. Schaffer* and *Louis M. Weintraub* of counsel), for appellant. The immunity of the executive from the subpœna power of the Legislature has been invariably and universally recognized wherever separate legislative and executive branches are found to exist. (*Kilbourn* v. *Thompson,* 103 U. S. 168; *United States* v. *Burr,* Fed. Cas. No. 14,694; *Martin* v. *Mott,* 12 Wheat. 19; *People ex rel. Sutherland* v. *The Governor,* 29 Mich. 320; *People ex rel. Broderick* v. *Morton,* 156 N. Y. 136; *Matter of Donnelly* v. *Roosevelt,* 144 Misc. Rep. 525; *Springer* v. *Philippine Islands,* 277 U. S. 189; *Matter of Radio Station W N Y C* [*Novik*], 169 Misc. Rep. 502; 255 App. Div. 844; 280 N. Y. 629; *State ex rel. Davern* v. *Rose,* 140 Wis. 360.) Under the charter the Mayor and the Council are created as mutually independent co-ordinate executive and legislative branches of the city government. (*Paulsen* v. *Portland,* 149 U. S. 30; Charter of City of New York [effective Jan. 1, 1938], §§ 3, 4, 5, 21, 38, 39, 43, 121, 125; *Matter of Radio Station W N Y C* [*Novik*], 169 Misc. Rep. 502; 255 App. Div. 844; 280 N. Y. 629; *People* v. *Tremaine,* 252 N. Y. 27; *Hampton & Co.* v. *United States,* 276 U. S. 394.) Section 43 of the charter cannot be so interpreted as to destroy the mutual independence of the Mayor and Council as it is established by the charter. (*Matter of Herlands* v. *Surpless,* 171 Misc. Rep. 914; 258 App. Div. 275; 282 N. Y. 647; *Matter of Radio Station W N Y C* [*Novik*], 169 Misc. Rep. 502; 255 App. Div. 844; 280 N. Y. 629.)

*Emil K. Ellis, Louis Gruss, Myron A. Ellis, Jonas Ellis* and *Murray Forer* for respondents. There is nothing in the Constitution of the State, the charter of the city nor in any state statute providing for such a clear separation of executive, legislative and judicial powers in the municipal government of the city as entitles the Mayor to claim immunity from the subpœna power of the local legislative body, the city Council. (*Donnelly* v. *Roosevelt*, 259 N. Y. Supp. 356; *People ex rel. Broderick* v. *Morton*, 156 N. Y. 136; *City of Trenton* v. *New Jersey*, 262 U. S. 182; *Mayor of City of New York* v. *Miln*, 11 Pet. [U. S.] 102; *Demarest* v. *Mayor*, 74 N. Y. 161; *Adler* v. *Deegan*, 251 N. Y. 467; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Dreyer* v. *Illinois*, 187 U. S. 71; *McGrain* v. *Daugherty*, 273 U. S. 135; *State* v. *Lane*, 181 Ala. 646; *Baltimore R. Co.* v. *Whitney*, 161 Ind. 228; *Ford* v. *Mayor*, 134 Ga. 320; *Uridias* v. *Morrill*, 22 Cal. 473; *Stanton* v. *Board of Supervisors*, 191 N. Y. 428.) The city Council is clothed with ample statutory powers to compel the attendance of any officer of the New York city government and the production by such officer of any documents or papers pertaining to the property, affairs or government of the city, and the Mayor, being an officer of the municipal corporation, is subject to such subpœna power, enjoying no immunity by legislative sanction, either express or implied, from testifying or producing documents. (City Charter, § 21; *Matter of Herlands* v. *Surpless*, 258 App. Div. 275; 282 N. Y. 647; *Adler* v. *Deegan*, 251 N. Y. 467; *Matter of Radio Station WNYC* [*Novik*], 169 Misc. Rep. 502; 225 App. Div. 844; 280 N. Y. 629; *Matter of Becker* v. *Lunn*, 200 App. Div. 178; *Matter of Egan*, 205 N. Y. 147.)

LEWIS, J. The respondents are members of a special committee of the Council of the city of New York appointed to investigate the affairs and conduct of the Municipal Civil Service Commission. In the course of committee hearings, the investigation was directed to the personnel at the Information Center and to matters involving the method of selection and the qualifications of certain appointees. The inquiry adduced the fact that prior to the Council's investigation the Mayor had directed a city employee to investigate matters which also related to the personnel at the Information

Center and that upon completion of her investigation the employee had made a written report to the Mayor. Thereupon a *subpœna duces tecum* was issued by the committee and served upon the Mayor's secretary demanding the production of such report. When compliance with the subpœna was refused and contempt proceedings against the Mayor's secretary were imminent the committee was informed in writing by the corporation counsel that " The Mayor is the person who has the possession, custody and control of such papers." It was in these circumstances, and in a continued effort to secure the written report and related papers which were in the Mayor's possession, that the *subpœna duces tecum* here in question was served upon the Mayor who promptly applied at Special Term for an order vacating the subpœna. The order of Special Term denying such application has been unanimously affirmed by the Appellate Division. The proceeding is here on appeal by our permission.

Accordingly our inquiry goes to the question whether records in the office of the Mayor of the city of New York, which are concededly pertinent to an official investigation by the Council as to matters relating to the affairs of a city department, are immune from the Council's power of subpœna.

We look first to the city's charter. By section 21 the Council is vested " * * * with the legislative power of the city." By section 43 — which bears the caption " Power of Investigation " — the Council is granted " power from time to time to appoint a special committee to investigate any matters relating to the property, affairs or government of the city or of any county within the city. *Any such committee shall have power to require the attendance and examine and take the testimony under oath of such persons as it may deem necessary.*" (Emphasis supplied.)

The power of investigation thus reserved to the Council is broad — indeed, it is broader than the analogous section of the prior charter. (L. 1901, ch. 466, § 54 [Cf. Tanzer " New York City Charter," p. 45].) Neither the Mayor, nor any other city officer is beyond the scope of investigation thus authorized unless some statute or some well-defined principle of law accords to the Mayor the immunity which he now asserts.

The Mayor recognizes the broad field of investigation thus opened to the Council by the city's charter. He asserts, however, that section 43 should not be construed so broadly as to destroy what he deems to be the mutual independence of the Mayor and Council. In support of that position the Mayor suggests that rigid independence between the functions of his office and those of the Council is in line with the theory which prompted the framers of the Federal Constitution to treat as separate the three branches of government — executive, legislative and judicial. We are told that the Federal plan, which has as one of its bases the requirement of making the three branches of government co-ordinate and independent, is also fundamental in the design for the government of cities and affords the only basis for decision in this proceeding.

Upon this subject the Supreme Court of the United States has said: " Whether the legislative, executive and judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State * * *. ' When we speak,' said Story, ' of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other, in the slightest degree. The true meaning is, that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution.' (Story's Const. [5th ed.] 393.) Again: ' Indeed, there is not a single constitution of any State in the Union, which does not practically embrace some acknowledgment of the maxim, and at the same time some admixture of powers constituting an exception to it.' (Story's Const. [5th ed.] 395.) " (Dreyer v. Illinois, 187 U. S. 71, 84; Williams v. Eggleston, 170 U. S. 304, 310.)

As to the pattern of government adopted by the State of New York, it may be said that the design includes by implication the

separation of executive, legislative and judicial powers. But when the State in turn made provision for the government of cities — which this court has defined as " political institutions, erected to be employed in the internal government of the State " (*City of New York* v. *Village of Lawrence,* 250 N. Y. 429, 437) — we find many instances, including that of the city of New York, where tripartite, independent branches of government are not prescribed.

The State Constitution provides that " It shall be the duty of the legislature to provide for the organization of cities * * *." (Art. IX, § 9.) In the charter which the Legislature provided for the city of New York (L. 1934, ch. 867 — adopted by referendum November 3, 1936, effective January 1, 1938) it did not see fit to set up tripartite, co-ordinate branches of government which are independent of each other. True, it prescribed that the Mayor shall be " the chief executive officer of the city " (Charter, §§ 3, 4, 5) and that the Council is " the local legislative body of the city." (Id. § 21.) But the fact that functions are exercised by the Mayor and the Council which are independent of each other is not enough, as we conclude, to entitle the Mayor to invoke immunities which he now asserts and which are accorded the executive under the Federal plan of government.

Under charter provisions the Mayor, when sitting as a member of the Board of Estimate, shares many executive responsibilities with the Comptroller, the President of the Council and the Presidents of the five boroughs. (Ch. 3, §§ 61, 62, 70.) As a member of the Board of Estimate he is a member of the Municipal Assembly (L. 1924, ch. 363, § 10; amd. L. 1928, ch. 671) and as such may perform certain legislative functions (Charter, § 39). And although no provision is made for a judicial branch of the city's government, the charter contains the anomalous provision that " The mayor is a magistrate." (Id. § 6.)

It is thus seen that, unlike the office of President under the federal system, the powers of the office of Mayor of the city of New York are not exclusively executive. And unlike the federal system, which recognizes a separation of powers into three independent branches, the chartered plan of government for the city of New York has but two branches — executive and legislative — the functions of which, as defined by the Legislature, are not

always independent. This comes about, as we have seen, from the fact that a city is not sovereign, as are the federal government and the states. "A municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the state for conducting the affairs of government, and as such it is subject to the control of the legislature." (*Williams* v. *Eggleston, supra*, p. 310.) "In the absence of express restrictions placed by the Constitution upon the exercise of its legislative powers, the Legislature may create or destroy, enlarge or restrict, combine or divide, municipal corporations." (*City of New York* v. *Village of Lawrence, supra*, p. 437.)

It is for that reason that the theory of co-ordinate, independent branches of government has been held generally to apply to the national system and to the states but not to the government of cities. (*State ex rel. Wilkinson* v. *Lane*, 181 Ala. 646, 658; *Uridias* v. *Morrill*, 22 Cal. 474, 478; *Kaufman* v. *City of Tallahassee*, 84 Fla. 634, 639; *Ford* v. *Mayor & Council of Brunswick*, 134 Ga. 820; *Sarlls* v. *State*, 201 Ind. 88, 115; *Eckerson* v. *City of Des Moines*, 137 Iowa, 452, 461–466; *Bryan* v. *Voss*, 143 Ky. 422, 427; *People ex rel. Simpson* v. *City of Mankato*, 117 Minn. 458, 467–469; *Barnes* v. *City of Kirksville*, 266 Mo. 270, 282; *City of Greenville* v. *Pridmore*, 86 S. C. 442, 443; *Walker* v. *City of Spokane*, 62 Wash. 312, 324, 325.)

The case of *Springer* v. *Philippine Islands* (277 U. S. 189), cited by the appellant, is not an authority opposed to our view in the present proceeding. There the controversy involved the validity of a law which purported to restrict the power of the Governor-General who was given "the supreme executive power" by the "Organic Act"—the fundamental law of the Philippine Islands. There an express provision for the separation of powers was held to be contained within the Organic Act. The questions there determined differ widely from the one now before us.

In our consideration of the present problem we must assume that the action of the Special Committee of the Council in issuing the *subpœna duces tecum* now challenged, had a legitimate objective. We have treated the committee's power of inquiry, with process to enforce it, as an essential auxiliary to its legislative function. (*Wilckens* v. *Willet*, 1 Keyes, 521, 525; *People ex rel. McDonald*

v. *Keeler*, 99 N. Y. 463, 481, 482, 487; *McGrain* v. *Daugherty*, 273 U. S. 135, 174; *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, 478; *Matter of Joint Legislative Committee*, 285 N. Y. 1, 8.) We cannot say, as does the Mayor, that implicit in those provisions of the charter which prescribe the functions of the Mayor and the Council, is an intention by the Legislature to keep the two in a constant state of isolated independence. The scope of section 43 of the charter, already quoted, is broad. In the absence of some principle of law or some legislative declaration of public policy to the contrary, we regard that section as broad enough to apply to the Mayor of the city. We have seen that the principle of the separation of powers applies only to the sovereign authority — not to the government of cities. Accordingly we may not read into section 43 by implication a right of immunity such as the Mayor now asserts.

The order should be affirmed, without costs.

LEHMAN, Ch. J. (dissenting). The Charter of the City of New York provides, in section 21, that " the council shall be vested with the legislative power of the city, and shall be the local legislative body of the city, with the sole power to adopt local laws under the provisions of the city home rule law or otherwise, without requiring the concurrence of any other body or officer except as provided in sections thirty-eight, thirty-nine and forty." Incidental to, but not limiting the general legislative power of the Council, the charter confers upon the Council certain enumerated powers. (§ 27.) It is expressly given " power from time to time to appoint a special committee to investigate any matters relating to the property, affairs or government of the city or of any county within the city. Any such committee shall have power to require the attendance and examine and take the testimony under oath of such persons as it may deem necessary." (§ 43.)

Pursuant to the provisions of that section the Council has appointed a special committee to investigate the Municipal Civil Service Commission of the City of New York. That committee has served upon the Mayor of the city a subpœna requiring him to appear before the committee " to testify and give evidence in a certain inquiry and investigation of the said Municipal Civil Service Commission, now being conducted pursuant to the pro-

visions of a resolution of the Council of the City of New York, adopted by said Council May 7th, 1940, as amended; and that you bring with you and produce at the time and place aforesaid a certain report, memorandum or communication made to you by one Ethel Epstein in the employ of the city of New York in or about the early part of 1940 relating to the personnel of the Information Center of the City of New York and any correspondence between yourself or your office, with the Municipal Civil Service Commission or with any other department of the city with relation to said personnel and the qualification of any of said personnel by the Civil Service Commission and the examination for the position of Assistant Director of the Information Center and the eligibility requirements for said examination now in your custody, and all other papers, records, writings and evidences which you have in your custody or control concerning the premises. And for a failure to attend and to produce and bring with you the foregoing, you will be punished as and for a contempt." The Mayor moved in the Supreme Court for an order to vacate and quash the subpœna or, in the alternative, to modify the subpœna "so as to exclude therefrom any and all reports, memoranda, communications or other documents which the petitioner, as the chief executive officer of the city of New York, deems to be executive documents, and for such other and further relief as the Court shall deem just and proper in the premises."

Chapter I of the charter is entitled "Mayor." In the first section of that chapter it is provided that "the mayor shall be the chief executive officer of the city." (§ 3.) The second chapter of the charter is entitled "Council." Section 21, already quoted herein, is the first section of that chapter. Though the power conferred upon the Council by section 43 to appoint a special committee to investigate any matters relating to the "property, affairs or government of the city" is subject to no express limitation, the Mayor contends that its exercise is restricted to the field of legislative powers vested in the Council and that in the exercise of the powers conferred upon the Mayor as "chief executive officer of the city" the Mayor is not subject to command or interference by the Council.

The principle of separation of governmental powers is " as a general rule inherent in the American constitutional system." (*Springer* v. *Philippine Islands,* 277 U. S. 189, 201.) It is " inherent " even though unexpressed in the fundamental law. Where legislative, executive and judicial powers are distributed by the fundamental law among separate departments the courts are constrained to read into the law as a logical conclusion the implied provision that the powers so distributed are to be forever " separate and distinct from each other." So, in that case, the court said that " some of our state constitutions expressly provide in one form or another that the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other. Other constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments." The question presented upon this appeal is whether under the charter there has been such separation and distribution of the powers of the Mayor as chief executive and the powers of the Council as the local legislative body of the city that there is implicit, though not expressed, the rule or principle that legislative and executive powers are to be separate and distinct from each other and that neither the powers conferred upon the Mayor nor the power conferred upon the Council may be exercised in manner which would infringe upon the independence of the other.

The question so posed is purely one of statutory construction. In providing a form of government for the cities of the state the Legislature is restricted only by the provisions of the Constitution of the State and the State Constitution contains no provision, express or implied, that the form of government provided for cities shall embody the principle of governmental separation. of powers. It cannot be disputed that the Legislature may impose upon cities the commission form of government which almost completely disregards the principle of separation of powers or it may adhere to that principle in part and reject it in part. Nonetheless, if in the charter the Legislature has provided a form of government in which executive powers vested in the Mayor and legislative powers vested in the Council are intended to be kept separate, distinct and independent, that intention must be given effect.

In *Springer* v. *Philippine Islands* (*supra*) a similar question was presented when the court was called upon to construe a *statute* of Congress creating a government for the Philippine Islands. No provision of the Constitution of the United States there constrained the Congress, in enacting the organic law for the Philippine Islands, to separate governmental powers in accordance with the principle embodied in state and federal Constitutions. The Congress chose, however, to do so and the Supreme Court of the United States construed the statute accordingly, saying: " That the principle is implicit in the Philippine Organic Act does not admit of doubt." Here the charter constitutes the " organic act " for the city of New York. It confers executive powers upon the Mayor and it confers legislative powers upon the Council. Neither the Mayor nor the Council may exercise powers other than those conferred by the charter. As in the *Philippine Islands* case, the problem here presented is how far that separation of powers was *intended* to be complete.

The cases cited in the opinion of Judge LEWIS decide that though in the State and National governments the principle of separation of governmental powers is implicit as a logical conclusion from the distribution of powers among separate departments in the Constitution establishing such governments, yet the Legislatures, vested by those Constitutions with legislative power to provide for the incorporation and government of cities or other municipal corporations, are not bound, in the exercise of that power, to distribute or to separate governmental powers. These cases do not, I think, establish or even imply that the " theory of co-ordinate independent branches of government " has been held, generally, not to apply to city governments. On the contrary, in these cases there was a challenge of a then novel assertion of power by the Legislature to reject a theory which for a century or more had been generally accepted though not rigidly applied in the creation of city government. These cases do not decide or, I think, even suggest that where the Legislature has *distributed* governmental powers among separate departments of a city government, the principle of *separation* of power is not implied as a logical conclusion from such distribution.

The charter confers upon the Commissioner of Investigation, appointed by the Mayor, as well as upon the Council, broad power of investigation. He is required to "make any investigation directed by the mayor or the council." (§ 803.) I recognize, of course, that upon this appeal the question is not presented whether that section empowers the Commissioner to investigate the conduct of members of the Council or to subpœna them. I point out only that the grant of power to the Commissioner is, like the grant of power to the Council, not made subject to any express limitation and that unless we read such limitation by implication into the grant of power to one or both it will be within the power of a committee of the Council to summon the Mayor to testify in the course of a legislative investigation and within the power of an official appointed by the Mayor to summon the members of the Council in an investigation directed by the Mayor. It seems to me clear that there is necessarily implied in the grant of power to each a limitation that neither Council nor Mayor may encroach upon the field reserved for the other. Otherwise, the exercise by one of power for political or personal ends might invoke retaliation by the other. The extent of the power claimed by the Councilmanic committee and its necessary effect upon the efficiency of municipal government is well illustrated by the nature of the paper which the Mayor has been subpœnaed to produce. It is, as Judge LEWIS points out, a written report made to the Mayor in regard to an investigation which the Mayor had directed the officer to make for the information of the Mayor in relation to the performance of duties by executive officers within the field where the Mayor is, by the charter, the responsible head. The Mayor challenges the right of the committee to compel its production. He does not claim that it contains information which, in the public interest, should not be revealed. He does claim that the public interest demands that reports of such investigation be treated as confidential unless declared to be public records in accordance with the provisions of section 51 of the General Municipal Law (Cons. Laws, ch. 24) or demanded upon an investigation which the State might have a right to make.

The Commission which formulated the proposed charter was attempting to devise an organic law which would provide a practical

and efficient form of administration of the affairs of the city of New York, not an ideal form of administration of the affairs of an ideal city in the land of Utopia. We may assume that its members knew that even in the field where observance of the principle of separation of powers is commanded by the Constitution, " the exigencies of government have made it necessary to relax a merely doctrinaire adherence to a principle so flexible and practical, so largely a matter of sensible approximation, as that of the separation of powers." (*Matter of Richardson*, 247 N. Y. 401, 410.) We may assume, too, that they knew that though the power of the Legislature to provide a form of municipal government or administration of the affairs of a city which completely abandoned the principle of separation of powers as in the " commission " form of government had been challenged in many jurisdictions, it had been everywhere sustained. Knowing all that they formulated a charter which did at least in large measure separate executive and legislative power and which in its first chapter conferred upon the Mayor broad powers as the " chief executive officer of the city " and in its second chapter conferred upon the Council broad " legislative power " as " the local legislative body of the city." Here we have a system in which there is at least some " approximation " of the principle of separation of executive and legislative power. Obviously in a city government the approximation must always be incomplete. We must decide how far there is implied in that separation the rule that the powers conferred upon the Mayor and Council are not only separate, but exclusive.

The fact that the separation of executive and legislative powers is not entirely complete does not show that the separation so far as made was not intended to create fields in which the powers of the Mayor and the Council are exclusive. That would be true even where the rule of separation of powers is mandatory. " The existence in the various constitutions of occasional provisions expressly giving to one of the departments powers which by their nature otherwise would fall within the general scope of the authority of another department emphasizes, rather than casts doubt upon, the generally inviolate character of this basic rule." (*Springer* v. *Philippine Islands, supra*, p. 202.) The charter as adopted must be construed in the light of the fact that it provides a form of

government which in large degree conforms to the traditional pattern of government and which recognizes a division between executive and legislative powers. In no case that has been found by either counsel has any local legislative body asserted a right to subpœna the chief executive officer of a municipality or to require him to produce documents which have been prepared for his information in the course of the performance of his executive duties. In final analysis the question to be decided by us is whether there can be efficient government in which there has been in large degree a separation and distribution of power unless the powers so separated and distributed are deemed exclusive.

Again I point out that the Charter we are construing is intended to provide for the city of New York, not for an ideal city in Utopia. Visionary dreamers, but not men of practical experience, might have assumed that neither the Council nor the Mayor would ever attempt, for political or other reasons, to interfere with or discredit the other. I do not suggest that in this case the Council is attempting to do that, but certainly the power which it now asserts might be used for such purpose. Nor do I suggest that the Mayor has with such purpose ever asserted a power which encroached upon the field of powers allotted to the Council, but in *Matter of Radio Station WNYC* (280 N. Y. 629) this court held unanimously that section 38 of the charter which provides that " every local law or resolution * * * after its passage by the council, shall be presented to the Mayor for approval " does not apply to a resolution adopted by the Council for the appointment of a special committee to investigate the management of the Municipal Broadcasting System of the city. Section 38 in terms, it must be noted, applies to *every resolution*. We felt constrained, nonetheless, to exclude from its scope a resolution which was not analogous to a local law and was adopted in the exercise of a power merely incidental to the exercise of the Council's general legislative power. Practical considerations and age old American traditions of government demanded the rejection of a literal construction of the charter which would give to the " chief executive officer " of the city the power to impede the Council in the exercise of powers conferred upon it only as an incident of its " general legislative powers." The same practical considerations and established traditions demand the

rejection of a literal construction of the charter which would give to the Council the right and power to impede the chief executive officer of the city in the exercise of his executive powers.

That the powers of the Mayor as the chief executive officer are vested in him alone and are not subject to control by the Council is clear beyond dispute. Interference by one governmental department with the performance by the head of another governmental department of powers exclusively vested in him has never heretofore been sanctioned. I repeat that the Legislature might have devised a system of government without separation of governmental powers or departments, but it has not chosen to do so. The organic law of the city confers upon the Mayor alone certain executive powers, and it places upon him the burden of the responsibility which flows from governmental powers and duties. Implicit in the grant of exclusive power and exclusive responsibility is the rule that no other department of city government may interfere with the chief executive officer of the city in the exercise of his power and in carrying out his responsibility. That is true alike where the Legislature is required by the Constitution to set up separate departments of government each vested with exclusive power and where the Legislature freely chooses to do so. The charter must be construed in the light of these tried traditions of American government. The conditions created by the war have again demonstrated their wisdom. To meet those conditions the Legislature may grant to the Mayor additional powers or may limit or may withdraw powers heretofore granted to him and vest them in some other officer or department, either State or local. Where exclusive executive power and exclusive responsibility is vested in the chief executive officer of the city he should not be subjected to the possibility of being impeded or harassed by another department of the city government which shares neither his duty nor his responsibility. To give another department the power to harass or impede the chief executive is to invite disaster. We may properly find that the subpœna issued by the Committee of the Council would in this case constitute no substantial interference. So, too, we may assume for the purposes of this appeal that the Council as now constituted would not tolerate unreasonable interference with the Mayor by its Special Committee for personal or political reasons and that the Mayor would not direct or tolerate unreason-

able interference with members of the Council for like reasons. That is immaterial. The question before us concerns the scope of the power of the Council, not the propriety of its exercise. Perhaps at some time in the future a " chief executive officer " and members of the Council may be elected who are temperamentally unable or even unwilling to impose upon themselves a measure of self-control so rigid, so perfect and complete.

The orders of the Appellate Division and of Special Term should be reversed and the motion to vacate the subpœna should be granted.

LOUGHRAN, FINCH, CONWAY and DESMOND, JJ., concur with LEWIS, J. LEHMAN, Ch. J., dissents in opinion in which RIPPEY, J., concurs.

Order affirmed.