188 So.2d 523

**J. R. DAY et al.**

v.

**Will Ivy ANDREWS et al.**

**4 Div. 248.**

Supreme Court of Alabama.

June 16, 1966.

John C. Walters, Troy, for appellants.

Henry B. Steagall, II, Chas. O. Stokes and Chas. L. Woods, Ozark, for appellees.

HARWOOD, Justice.

In the proceedings below Will Ivy Andrews, James Alford, and Frieda Bruer, duly appointed members of the City Board of Education of the City of Daleville, filed a complaint seeking to enjoin the Mayor

and members of the City Council of Daleville from attempting to remove them as members of the Board of Education.

A temporary injunction was issued, and upon motions to dissolve and set aside the temporary injunction, a full hearing was had upon the motions with many witnesses testifying. After such hearing, the court entered an order making permanent the injunction which in effect restrained the City Council from conducting a proposed meeting to be held for the purpose of removing the members of the Board of Education from their positions, and further restraining the members of the City Council from interfering with the members of the Board of Education in their functions as members of such board, and particularly from interfering with the efforts of the board to employ a qualified person as principal of the city schools. This appeal is from that decree.

The evidence shows that on 28 June 1965, the Board of Education had removed the then superintendent of the city schools, and were in the process of employing another. This action was solely within the province of the Board of Education, who are empowered by Section 177, Title 52, Code of Alabama 1940, to appoint such superintendent to hold office at the pleasure of the board, and also to remove such superintendent for certain causes, or "when, in the opinion of the board, the best interests of the schools require it."

Even though the board acted within its statutory powers, the action of the board was met with strong displeasure by the Mayor and City Council.

On 1 July 1965, the board met with Phillip Granger with the intent of engaging him as the new superintendent, and on 7 July, the board went to Montgomery to confer with the State Superintendent of Education in connection with their actions.

Upon their return that night the board was served by a Daleville policeman with a written demand, signed by J. R. Day as Mayor, that Will Ivy Andrews resign as a member of the board. A reply was requested by 8 July 1965, which would be the next day.

On 8 July 1965, the board again met with Granger. Mayor Day appeared at this meeting and after asking Granger to leave, he told the board members that they had until midnight to resign, and the appointment of a new superintendent should be left to the new board of education to be appointed by the City Council. Mayor Day admitted that he had used the word "ultimatum" when telling the members of the board they had until midnight to resign.

The board refused to resign, and proceeded to enter into a contract with Granger to serve as City Superintendent of Schools.

That night Mayor Day and another councilman went to Granger's home in Hartford and talked with him. The next day, Granger returned to Daleville and informed the board he could not serve under the circumstances.

On 13 July 1965, the appellees, as members of the board, were served with a written notice of a called meeting of the City Council to be held on 15 July 1965, to be conducted by the council to remove the appellees as members of the City Board of Education. Each of the appellees was "commanded and ordered" to appear at said meeting to present any defense they might have. The notice was signed by Mayor Day and four councilmen.

By their actions, it is evident that Mayor Day and the councilmen acting in concert with him, had no comprehension as to the limits of their power and authority in the premises, or of the powers and authority vested in boards of education by the statutes and decisions of this state.

Section 151, Title 52, Code of Alabama 1940, empowers the governing body of a city to select a board of education of five members to exercise the government and control of the schools of such city, and the

terms of such members are fixed at five years, one member to be elected in April of each year. This section further provides that no member of a city board of education shall be a member of the city council or commission, and that no person shall be appointed a member of a city board of education "who is in any way subject to the authority of the board." The word "board" in the above provision can only be deemed to mean the selecting or appointing board, i. e., the city governing body.

A reading of the entire provisions concerning the appointing and functioning of city boards of education shows beyond per adventure that the legislative purpose was to invest in boards of education, when duly and legally selected, the authority to act as free and independent agencies of the city in the operation of the city school systems, free of interference by the governing bodies which may have appointed the members.

Members of a city board of education, after due appointment, are officers of the city and cannot be removed except for causes specified in Section 173 of the Constitution of Alabama 1901, and courts of equity will protect by injunctive process the incumbent of an office, who shows a prima facie right to continue in office, from the intrusion of adverse claimants who are without right or title to the office. Wright v. Cook, 216 Ala. 270, 113 So. 252.

Where city, county, or state officers are elected or appointed for a definite term of office, they are therein under the protection of our Constitution, and cannot be removed except for causes and in the manner provided by Sections 173–175 of our Constitution, i.e., by impeachment proceedings in the circuit court or other courts of like jurisdiction.

In brief, counsel for the appellants, Mayor Day and the council, argues that this judgment should be reversed because the appellees came into court with unclean hands.

Counsel sets forth some four matters which he contends sustain this thesis.

The first instance is that Will Ivy Andrews, Chairman of the Board of Education, coerced Councilman King into withdrawing as a party to this suit. All that the evidence shows in this regard is that Andrews and his employee King had a conversation in the courtroom during these proceedings. The conversation pertained to a matter unrelated to this suit. It was also shown that Andrews "signs King's checks." This is insufficient to establish intimidation of King by Andrews.

The second instance which counsel argues establishes unclean hands on the part of the appellees, is based on the testimony of Mayor Day that James Alford, one of the appellees, agreed that should he be reappointed to the board of education he would vote on matters coming before the board as the council directed him to vote. Alford denied any such agreement. This contradiction in the evidence merely raised a question of fact within the province of the court, sitting without a jury, to resolve. Even so, the appellants are hardly in position to advance such an argument in view of the specific provisions of Section 151, supra, that no person shall be appointed a member of a city board of education "who is in any way subject to the authority of the" (selecting) "board."

The third basis of counsel's argument of unclean hands is the discharge of the former superintendent by the board of education. There is nothing in the record tending to show that the board of education in anywise acted improperly in carrying out the duties and authority vested in the board by the applicable laws governing.

Fourthly, counsel argues that in their sworn bill the appellees alleged that during the controversy, the members of the board of education had been subjected to anonymous telephone calls and other forms of pressure to force their resignations, yet no evidence was offered in support of this allegation. Counsel urges this as further

evidence of unclean hands. When appellees, in the proceedings below, attempted to offer evidence in support of this allegation, the court sustained the objections *of the appellants* to questions seeking to elicit testimony in support of this allegation, apparently on the theory that it was not alleged that appellants had made these calls. Having prevented the introduction of evidence to establish the allegation that the members of the board had received anonymous telephone calls, the appellants are in no position to complain of lack of proof in this instance.

Further, it is not always necessary to prove every allegation of a bill when the bill contains more than is necessary to be proved and the essentials warranting the relief sought have been established. Ellis v. Womack, 247 Ala. 254, 23 So.2d 859.

We have written to all points sufficiently argued in appellant's brief to invite our attention. This judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.