484

BOARD OF TRUSTEES OF THE FREE PUBLIC LIBRARY OF THE CITY OF UNION CITY, IN THE COUNTY OF HUDSON, A BODY CORPORATE OF THE STATE OF NEW JERSEY, *ET AL.*, PLAINTIFFS, v. THE CITY OF UNION CITY, IN THE COUNTY OF HUDSON, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 3, 1970.

*Mr. Joseph L. Freiman,* attorney for plaintiffs.

*Mr. Victor P. Mullica,* attorney for defendants.

LARNER, A. J. S. C.   This opinion is limited to the issues raised by the third count of the amended complaint wherein plaintiffs seek to quash subpoenas summoning Herbert Borneman and Kenneth E. Traphagen as witnesses before the investigating committee of Union City appointed pursuant to *N. J. S. A.* 40:48–25 *et seq.,* and 2A:67A–1 *et seq.,* and to enjoin defendants from undertaking any investigation per-

taining to the operations of the Free Public Library of Union City. By consent of the parties the matter was heard in a summary manner and is to be determined by the court as a matter of law.

The controversy arises as a result of the creation of a municipal investigating committee by the Board of Commissioners of the city pursuant to the authority of *N. J. S. A.* 40:48–25, which grants the power of subpoena to a committee of the governing body of a municipality appointed to consider "any subject or matter within its jurisdiction."

The municipal resolution in question provides:

WHEREAS, by reason of a Municipal Election held in the City of Union City on Tuesday, May 12, 1970, there was elected to the office of Commissioner, HARRY M. CALANDRILLO, JR., JAMES E. LAGOMARSINO, PAUL J. LOMBARDO, WILLIAM J. MEEHAN and FRANK X. CLARK: and

WHEREAS, said newly elected Commissioners, upon taking their oath of office, and having undertaken the duties of their respective offices, have ascertained certain deficiencies in records heretofore kept, and in other practices in the various departments; and

WHEREAS, it is deemed necessary for the purpose of promoting efficiency and economy in government and in the best interests of the City of Union City to have said investigating committee;

NOW, THEREFORE, be it

RESOLVED, that HARRY M. CALANDRILLO, JR., JAMES E. LAGOMARSINO, PAUL J. LOMBARDO, WILLIAM J. MEEHAN and FRANK X. CLARK, be and they are hereby designated as an Investigating Committee to examine any and all officials, officers and employees of the City of Union City in relation to the discharge of his or their official duty or conduct, as the case may be, and to examine and investigate such additional subject, persons or matters falling within the jurisdiction of this Investigating Committee as may, in the judgment of said Committee, require or necessitate such examination and investigation.

Plaintiffs are the board of trustees of the Free Public Library and two members of the board under subpoena. (The legality of the board and the appointment of its members is under attack in another phase of this litigation). They challenge the proposed investigation into their operations and activities on the following grounds that (1) the Free

Public Library is an autonomous body, free of control or supervision by the board of commissioners of the city; (2) the individuals who were subpoenaed are not officials, officers or employees of the city subject to investigation within the scope of the resolution creating the investigating committee; and (3) the intended investigation of the Library is being undertaken in bad faith and without a legitimate public purpose.

The issue involved is a novel one for it has not been determined by any reported opinion in this State.

The creation and operation of a free public library in a municipality is governed by *N. J. S. A.* 40:54–1 *et seq.* The board of trustees constitutes a corporate entity with independent powers to manage and operate the library. *N. J. S. A.* 40:54–12. However, despite its independent status, the library is "an adjunct of the local government in the field of education and intellectual recreation, and under its control." *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579, 583 (1949).

Various facets of interdependence can be gleaned from the legislative scheme. The cost of operation is borne by local taxation, and the moneys are appropriated by the local governing body, albeit the amount of the appropriation is mandated by the Legislature. *N. J. S. A.* 40:54–8. The trustees are appointed by the mayor, and the mayor and the head of the local school system are ex-officio members of the board. *N. J. S. A.* 40:54–9. Library funds are deposited in the municipal treasury and disbursed by municipal officials on the vouchers of the trustees. *N. J. S. A.* 40:54–18. The mayor fixes the amount of the bond of the treasurer of the board. *N. J. S. A.* 40:54–13. The board is required to render an annual report to the governing body. *N. J. S. A.* 40:54–15. The board can only purchase lands, erect buildings, or alter the same with the approval of the mayor and governing body of the municipality; and after such a purchase title to the real estate is taken in the name of the municipality. *N. J. S. A.* 40:54–25.

Furthermore, it has been determined by our courts that employees of the library are in the paid service of the municipality and therefore entitled to civil service status. *Trustees of Free Public Library, Newark v. Civil Service Commission,* 83 *N. J. L.* 196 (Sup. Ct. 1912), aff'd 86 *N. J. L.* 307 (E. & A. 1914), and that the municipal bidding statutes are applicable to contracts undertaken by a library. *Glick v. Trustees of Free Public Library,* 1 *N. J. Super.* 308 (App. Div. 1949), aff'd 2 *N. J.* 579 (1949).

The foregoing illustrates that regardless of the corporate status of the board of trustees of the Library and its independence in operation and management, the municipality as a whole, and the governing body in particular, have a substantial involvement with the welfare and management of the library business in the areas of finance and personnel. For many purposes the Library is but a branch or agency of the municipality, and its mere form as a corporate entity does not detract from the substance of its status as a branch of the municipality under the legislative design. See *Glick* and *Trustees of Free Public Library, Newark, supra.* For an analogous case, see *Dept. of Civil Service v. Clark,* 27 *N. J. Super.* 290 (Law Div. 1953), aff'd 15 *N. J.* 334 (1954), involving boulevard commissioners of Hudson County; compare *State v. Parking Authority, Trenton* 27 *N. J. Super.* 284 (Law Div. 1953), aff'd 29 *N. J. Super.* 335 (App. Div. 1954); *Monte v. Milat,* 17 *N. J. Super.* 260 (Law Div. 1952).

It is manifest, however, that the present issue before the court does not necessarily turn upon the structure of the Library board or the extent of its independence in management. The key problem, rather, is whether an inquiry into the activities of the board comes within the statutory authorization as a subject within the jurisdiction of the governing body of the municipality. In other terms, does such an inquiry serve any legitimate public purpose within the purview of the functions of the commissioners of Union City? See *Eggers v. Kenny,* 15 *N. J.* 107, 125 (1954).

Investigation in itself is an important and valuable tool for the functioning of government. In the absence of a clear showing of bad faith, such a power should be construed liberally to permit a broad scope of inquiry to achieve the legitimate ends of the investigation.

As has already been noted, the governing body has a substantial legitimate interest in the operation of the Library, particularly with reference to the handling of property and funds and the performance of the personnel constituting the Board of Trustees. The governing body and the public are entitled to know in what manner moneys are expended, how the buildings and equipment are used, whether the members of the board are qualified, in what manner they are performing their duties, and a myriad of other facts and data in connection with the management of the Library. So long as the Library facility is an adjunct of the municipality expending municipal funds, the proper area of investigation is broad and undefinable. The subject matter is clearly within the "jurisdiction" of the governing body as required by the applicable statute.

Plaintiffs have failed to submit any evidence to support a factual claim of bad faith, and the mere fact that the inquiry may be motivated by political ends is wholly immaterial with reference to the power and right to make such an inquiry. *Eggers v. Kenny, supra,* 15 *N. J.* at 125.

It must also be noted that the powers of the board of commissioners of Union City are not limited to the legislative function. A municipal commission form of government is not patterned upon the separation of powers applicable to Federal and State Governments. In a municipality of this type the governing body is invested with executive, administrative, judicial and legislative powers, authority and duties, which are distributed among five departments headed by the respective commissioners. *N. J. S. A.* 40 :72–4. See *Wintermute v. Ellenstein,* 117 *N. J. L.* 274 (Sup. Ct. 1936) ; *La Guardia v. Smith,* 288 *N. Y.* 1, 41 *N. E.* 2d 153, 155 (Ct. App. 1942) ; 42 *Colum. L. Rev.* 1217 (1942). Consequently,

the legitimate ends of investigation available to the governing body of a municipality are much broader in scope than those relevant to an investigation under the aegis of a legislative body. The municipal government is involved in all facets of operation of government business, and as such its jurisdiction extends to any area of governmental activity which may call for some type of official imprimatur on its part. Thus, the purpose of the municipal investigation is not limited to the adoption of new legislation, but may be utilized for the development of any facts relevant to the administrative, executive or judicial functions as well. *Cf. Kilbourn v. Thompson,* 103 *U. S.* 168, 26 *L. Ed.* 377 (1881) ; 9 *Rutgers L. Rev.* 576 (1955), dealing with legislative investigations.

In addition to the attack on the basic power of the investigating committee to inquire into the affairs of the Free Public Library, plaintiffs challenge the inquiry and the issuance of the subpoenas on the ground that such action is beyond the compass of the resolution creating the committee and authorizing the investigation. It is contended that the resolution limits the committee's inquiry to municipal officials, officers and employees, and that the individual plaintiffs, as trustees of the Library, do not fall into that classification.

This contention is without merit. Even upon an assumption that plaintiffs Borneman and Traphagen are not "officials, officers or employees" of the city, the resolution in question contains a comprehensive clause which authorizes the committee "to examine and investigate such additional subject, persons or matters falling within the jurisdiction of this Investigating Committee as may, in the judgment of said Committee, require or necessitate such examination and investigation." It is apparent that the format of the resolution is identical with that utilized by the City of Jersey City which was before the court in *Eggers v. Kenny, supra,* and by the City of Newark in the case of *Wintermute v. Ellenstein, supra.* Furthermore, the underlying statute, *N. J.*

*S. A.* 40:48–25, permits the issuance of a subpoena "to any person within this state."

It is clear, therefore, that the trustees of the Free Public Library may be subpoenaed to testify before the investigating committee and to produce such records which may be in their possession pertaining to the Library and the conduct and management of its activities; and they are compelled to honor the subpoenas heretofore served upon them for a date to be set by the committee.

Judgment will be entered in favor of defendants accordingly.