OPINION OF THE COURT
Mario J. Rossetti, J.
This is an application by members of the Buffalo Common Council for an order quashing subpoenas issued by the Special Investigator for the Mayor of the City of Buffalo and for an order granting the Common Council of the City of Buffalo permission to intervene. The respondent seeks an order compelling the Council members to comply with said subpoenas.
*974 A brief historical background involving the organization, promotion, supervision, and development of the Softball League by the City of Buffalo and use of city parks is essential to a proper analysis of the issues presented in the instant matter.
In 1951, the Common Council, by resolution, authorized the Parks Department to institute and organize a Municipal Softball League (hereinafter referred to as the MUNY Board), and directed that it be operated under the auspices of the Parks Department and the Director of Recreation. From 1951 to 1984, the MUNY Board functioned with a board of directors appointed by the City Parks Commissioner, who was appointed by and answerable to the Mayor.
The Common Council, concerned over several expenditures made by the MUNY Board, adopted a resolution terminating the existence and operation of the MUNY Board and established a substitute MUNY Softball Board (hereinafter referred to as the League) for the purpose of organizing the 1985 Softball League. Ronald R. Raccuia, chief of staff to the Common Council, was appointed chairman of the 1985 Softball League. The Council, although concerned about possible misuse of League funds, never implemented a procedure requiring Raccuia or the Board to file an accounting with any city office or board, thereby giving Raccuia full unrestricted control over the League funds.
On April 15, 1986, a certificate of incorporation for the Buffalo Softball League, Inc., was filed with the Department of State under section 402 of the Not-For-Profit Corporation Law by independent counsel and thereafter operated as the Buffalo Softball League, Inc. (Erie County Clerk’s corporation file No. 77788). The incorporation of the League and its operation was and is without any explicit authority from the Council and/or the Mayor. Other than Raccuia’s position as chief of staff of the Common Council, the new League had no apparent legal nexus with the City of Buffalo.
An investigation by the Erie County District Attorney’s office disclosed that Raccuia had personally absconded with approximately $60,000 belonging to the League. On February 24, 1987, Raccuia was indicted by an Erie County Grand Jury and pleaded guilty on May 29, 1987, to 42 counts of embezzlement and forgery.
On March 6, 1987, Thomas Cleary, Esq., was appointed by the Mayor of the City of Buffalo as a Special Investigator to *975 probe the affairs of the League and the MUNY Board based on the published reports of the alleged criminal conduct of Ronald R. Raccuia.
The respondent, by letter, requested every member of the Council to be interviewed pertaining to the softball investigation. Only six Council members accepted the invitation. The respondent, to compel their appearance and testimony, served subpoenas on the remaining seven members.
Among the issues to be addressed is whether the Mayor’s power to subpoena is limited by the duties and responsibilities inherent in the office and further whether the purported investigation of the Softball League is a legitimate duty and function of the Mayor. The Mayor derives his duties, functions, and powers to investigate from three basic sections of the city charter and are set forth as follows:
"§ 65. Duties and Powers.
"The mayor shall be the chief executive officer of the city and shall * * * see to it that the duties of all other city officers, departments, boards, commissions and other city agencies are faithfully performed * * * He shall also exercise such powers and perform such duties as are imposed upon him by this act and by any local law or ordinance and by any provision of general law.”
"§ 68. Investigation by Mayor.
"The mayor is hereby granted all the powers of investigation conferred on the council by section forty-nine of this act, and all the provisions of said section shall apply to such investigations by the mayor.”
"§ 49. Investigations by Council.
"The council shall have power to issue subpoenas for witnesses to appear or to produce books and papers before it, to administer oaths to witnesses and to examine them and such books and papers.”
Sections 68 and 49 of the charter unequivocally mandate that the Mayor has the power to investigate and to subpoena witnesses.
There is no question that the Mayor is empowered under section 65 to investigate whether Ronald R. Raccuia was faithfully performing his duties, not only as chief of staff but also as titular head of the 1985 Softball Board, and further to investigate the who and why a not-for-profit corporation was *976 formed without apparent formal authority while giving the appearance of same.
Petitioners maintain that elected members of the Council are not city officers as is Ronald R. Raccuia, and, therefore, not subject to investigation and/or subpoena. This court disagrees with petitioners’ contention.
First, whether or not section 65 gives the Mayor the duty to insure that Council members, as city officers, faithfully perform their duties is not at issue here. The investigation herein pertains to the Buffalo Softball League, a board created by the Council, and of Ronald R. Raccuia, as a city officer and head of the Softball Board.
Secondly, although the charter does not explicitly define the term, "city officers,” a reading of various sections contained therein confirms that Council members are included in said classification. (Art 2-A, § 16; art 3, § 28 [4]; art 4, § 63; art 6, § 80; art 24, § 451 et seq.)
The court finds, therefore, that the members of the Common Council are officers as intended by section 68.
It is to be noted that the charter specifically gives the executive and administrative powers of the city to the Mayor. In fact, section 202 of article 11 gives the Commissioner of Parks, who is employed at the pleasure of the Mayor (art 11, § 201), the duty to regulate, supervise, manage, and control all forms of recreation in the city parks.
It is clear in considering all the factors that the administration of the Softball League is appropriately a function of the executive department. The fact that such function has recently been exercised by the Common Council does not deny the Mayor’s duty and responsibility to administer the Softball League, including investigation of wrongdoing by its Board.
Since the administration of the Softball League was traditionally and inferentially by charter an executive function, it logically follows that the Mayor has the responsibility to oversee its operation. As the Council has, on its own initiative and without charter authority, taken control of the Softball League, they are proper witnesses in an investigation concerning how and why the League was permitted to operate without any provision of accountability to the city.
Therefore, the court finds that the investigation of the Buffalo Softball League, Inc., is a proper exercise of the Mayor’s powers, duties, and functions.
Petitioners further contend that the doctrine of the separa *977 tian of powers prohibits one branch of municipal government from subpoenaing members of the other branch. It has been held, however, that the doctrine of the separation of powers is inapplicable to municipal governments. (Matter of LaGuardia v Smith, 288 NY 1 [1942]; Matter of L. Shain, 92 NJ 524, 457 A2d 828 [1983], citing LaGuardia v Smith as authority; Eggers v Kenny, 15 NJ 107, 104 A2d 10 [1954].)
In LaGuardia (supra), the Mayor of New York City attempted to quash subpoenas served upon him by the Council of that city. He argued that the doctrine of the separation of powers should limit the Council’s power to subpoena a member of the separate branch of the municipal government.
In response, the court, noting that the Charter of the City of New York conferred upon the Mayor certain functions shared with the Council, concluded that, unlike the office of President under the Federal system, the powers of the office of Mayor of the City of New York are not exclusively executive. The court also indicated that the City of New York has but two branches —executive and legislative — the functions of which are not always independent. For those reasons, along with the fact that municipal corporations are not sovereign, the court held that the theory of coordinate, independent branches of government is not generally applicable to the government of cities, and denied the Mayor’s motion to quash the subpoena. (Matter of LaGuardia v Smith, 288 NY 1, 6-7, supra.)
As we have noted, the administration of the Softball League is a function which can be exercised, and has been traditionally exercised, by the executive department. The Council has, on its own initiative, taken control of that traditionally executive function. Therefore, as in LaGuardia (supra), we do not have a separation of functions which would prohibit the issuing of subpoenas to members of the Council on the basis of the separation of powers doctrine. The Mayor is not delving into the affairs of a function which is exclusively the Council’s; therefore, the doctrine of the separation of powers does not apply and will not prohibit or limit the Mayor’s power to subpoena Council members as witnesses.
The controlling factor in determining who is subject to subpoena by a Mayor or a council is the language of the charter provision conferring the subpoena power. (Matter of LaGuardia v Smith, supra [upholding Council’s subpoena of *978 Mayor]; Matter of Krauss, 285 App Div 964 [2d Dept 1955] [upholding Mayor’s subpoena of a councilman]; Matter of Di Cocco v Stratton, 4 AD2d 978 [2d Dept 1957] [upholding Mayor’s subpoena of a noncity employee].) The language of section 49 of the Charter of the City of Buffalo is similar to the charter provisions of LaGuardia, Krauss, and Di Cocco, in that it does not limit the witnesses subject to. subpoena.
As the court stated in LaGuardia (supra) concerning the Mayor of New York, "[n]either the Mayor, nor any other city officer is beyond the scope of investigation thus authorized unless some statute or some well-defined principle of law accords to the Mayor the immunity which he now asserts.” (Matter of LaGuardia v Smith, 288 NY 1, 4, supra.) Petitioners have not provided the court with any such statute or principle of law which would insulate the petitioners as witnesses in an investigation conducted by the Mayor.
The final issue presented in regard to the Mayor’s power to subpoena is whether the failure to quash the subpoena in the present case would be a dangerous precedent, and a possible invitation to abuse in the future.
It is well established that the mere possibility of abuse in the future is not grounds for quashing a subpoena. (McGrain v Daugherty, 273 US 135, 175 [1927].) If abuse is encountered in the future, the witnesses herein should seek judicial relief. This court, however, does not find any evidence of abuse at this stage of the investigation.
Petitioners’ motion to quash the subpoenas, based on the foregoing, is hereby denied.
Applicants also request that Council be permitted to intervene in this proceeding. It is apparent that a subpoena may be challenged by the person whose rights or privileges may be violated. (In re Grand Jury Subpoena Served Upon Doe, 759 F2d 968; Matter of Selesnick, 115 Misc 2d 993; People v Johnson, 103 AD2d 754 [2d Dept 1984].)
However, petitioners’ supporting papers do not establish that the Council, as a separate entity, adopted a resolution approving intervention herein. Therefore, applicants’ motion to intervene is denied.
Finally, respondents’ cross motion for an order compelling petitioners to answer the subpoena is denied inasmuch as petitioners have not yet refused to comply with same.
*979 In conclusion, the court encourages all parties to complete their respective investigations, so that appropriate measures can be taken to insure the continuous development and operation of softball leagues in the City of Buffalo, while implementing proper procedures of accountability to avoid any further misappropriation of funds.