*1280
 
 BRYAN, Judge.
 

 The Council of the City of Phenix City and its members, H.S. “Sonny” Coulter, Jimmy Wetzel, Max Wilkes, Michelle E. Walker, and Arthur Sumbry (collectively “the Council”), appeal from a permanent injunction entered in favor of the Phenix City Board of Education (“the Board”). We reverse and remand.
 

 The Board is a city board of education authorized pursuant to § 16-11-1 et seq., Ala.Code 1975. The City of Phenix City (“the City”) has adopted a council-manager form of municipal government, pursuant to Act No. 71, Ala. Acts 1977. The Council appoints the members of the Board to serve five-year terms, with the term of one member expiring annually. § 16-11-3, Ala. Code 1975.
 

 The Council formed a committee to investigate conduct of the Board. In October 2010, the committee sent the Board’s attorney a letter directing the Board and its superintendent, Dr. Larry DiChiria, to produce certain information and documents concerning the Board’s activities. The Board did not produce the requested information and documents. In November 2010, the committee issued a subpoena directing DiChiria to produce the information and documents that the committee had requested in the letter. In serving the subpoena, the committee relied on § 9.03 of the City’s charter, which is identical to § 9.03 of Act No. 71, Ala. Acts 1977. Section 9.03 grants subpoena power to any committee authorized by the Council or the city manager “to inquire into the conduct of any office, department, board or agency or officer of the City” or “to make investigations as to municipal affairs.”
 

 The Board subsequently sued the Council, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent the Council from compelling the Board to produce the requested information and documents.
 
 [1]
 
 The trial court entered a temporary restraining order. On November 22, 2010, the trial court entered a permanent injunction enjoining the Council from subpoenaing the Board. The trial court concluded that § 9.03 did not grant the Council the authority to subpoena the Board. The Council appealed to the supreme court, and the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 “‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest.’
 

 “TFT, Inc. v. Warning Sys., Inc.,
 
 751 So.2d 1238, 1242 (Ala.1999), overruled on another point of law,
 
 Holiday Isle, LLC v. Adkins,
 
 12 So.3d 1173 (Ala.2008). The entry of a permanent injunction is reviewed de novo,
 
 TFT, Inc.,
 
 751 So.2d at 1241....”
 

 Sycamore Mgmt. Group, LLC v. Coosa Cable Co.,
 
 42 So.3d 90, 93 (Ala.2010).
 

 On appeal, the Council argues that § 9.03 grants it the power to subpoena the Board in this case. Section 9.03 provides:
 

 “Investigations by council or city manager. The council, the city manager, or any person or committee authorized by
 
 *1281
 
 either of them, shall have power to inquire into the conduct of any office, department, board or agency or officer of the City and to make investigations as to municipal affairs, and for that purpose may subpoena witnesses, administer oaths, and compel the production of books, papers and other evidence. Failure to obey such subpoena or to produce books, papers or other evidence as ordered under the provisions of this section shall constitute a misdemeanor and shall be punishable by a fine not to exceed $100 or by imprisonment not to exceed six months, or both.”
 

 The Council first argues that the members of the Board are “officers” of the City under § 9.03 and, therefore, that § 9.03 grants the Council subpoena power over the Board. In support of its argument, the Council cites
 
 Day v. Andrews,
 
 279 Ala. 563, 188 So.2d 523 (1966), which concerned an attempt by a mayor and city council to remove members of a city board of education. In
 
 Day,
 
 our supreme court stated: “Members of a city board of education, after due appointment, are officers of the city and cannot be removed except for causes specified in [Article VII,] Section 173 of the Constitution of Alabama 1901....” 279 Ala. at 565, 188 So.2d at 526.
 
 See also Wright v. Cook,
 
 216 Ala. 270, 271, 113 So. 252, 254 (1927) (stating that members of a town’s board of education “are officers of the town and cannot be removed from office except for the causes specified in [§ ] 173 of the Constitution”). Although the court in
 
 Day
 
 characterized members of a city board of education as officers of the city for purposes of impeachment under Art. VII, §§ 173-75, Ala. Const.1901, the court also stated:
 

 “A reading of the entire provisions concerning the appointing and functioning of city boards of education shows beyond per adventure that the legislative purpose was to invest in boards of education, when duly and legally selected, the authority to act as free and independent agencies of the city in the operation of the city school systems, free of interference by the governing bodies which may have appointed the members.”
 

 279 Ala. at 565,188 So.2d at 525-26.
 

 In
 
 Enterprise City Board of Education v. Miller,
 
 348 So.2d 782 (Ala.1977), our supreme court discussed how a city board of education should be characterized for purposes of determining immunity from tort actions. The supreme court stated:
 

 “Like county school boards, [city boards of education] are agencies of the state, empowered to administer public education within the cities. As such, a city school board is not a subdivision or agency of the municipal government.
 
 Opinion of the Justices,
 
 276 Ala. 239, 160 So.2d 648 (1964). A city school board’s relation to the city is analogous to a county school board’s relation to the county.
 
 State v. Brandon,
 
 244 Ala. 62, 12 So.2d 319 (1943).”
 

 348 So.2d at 783.
 
 See also Ex parte Phenix City Bd. of Educ.,
 
 67 So.3d 56 (Ala.2011) (stating that city boards of education are agencies of the State and, therefore, enjoy constitutional immunity from tort actions).
 

 Thus, a city board of education is an “independent agenc[y],”
 
 Day,
 
 279 Ala. at 565, 188 So.2d at 525, that is “not a subdivision or agency of the municipal government,”
 
 Miller,
 
 348 So.2d at 783. Therefore, we conclude that the members of the Board are not officers of the City under § 9.03. Thus, § 9.03 does not grant the Council or its committee subpoena power over the Board on the ground that the Board members are officers of the City.
 

 
 *1282
 
 The Council also argues that § 9.03 authorizes the subpoena in this case because, the Council says, the subpoena concerns “municipal affairs” under § 9.03. Thus, we must determine whether the activities of the Board are “municipal affairs.” Act No. 71, Ala. Acts 1977, does not define the term “municipal affairs.”
 
 Black’s Law Dictionary
 
 1042 (8th ed.2004) defines “municipal affairs” as “[t]he matters relating to the local government of a municipality.” One court interpreting a provision in a city charter granting a city council subpoena power with respect to “municipal affairs” has described the scope of those powers as “broad.”
 
 Frank v. Balog,
 
 189 Misc. 1016, 1019, 73 N.Y.S.2d 285, 288 (Sup.Ct.1947).
 

 In
 
 Board of Education of Union City v. Union City,
 
 112 N.J.Super. 493, 271 A.2d 733 (Law Div.1970), the Superior Court of New Jersey addressed whether a city’s governing body could exercise subpoena power over the city’s board of education. The state law in that ease granted the power of subpoena to a committee of the city’s governing body to consider “any subject matter within its jurisdiction.” 112 N.J.Super. at 494, 271 A.2d at 733;
 
 See
 
 N.J. Stat. Ann. § 40:48-25. Similar to the situation in this case, the court in
 
 Union City
 
 first acknowledged “the autonomous character of the board of education in the management and conduct of the school system.” 112 N.J.Super. at 495, 271 A.2d at 734. However, the court then stated:
 

 “[Tjhere are nevertheless certain areas of interdependence between the board [of education] and the governing body of the city.
 

 “The Board of Education of Union City is ... appointed by the mayor of the city.... There is a Board of School Estimate, composed of two members of the Board of Education, two members of the governing body and the mayor, which passes on the school budget and fixes the amount of the necessary appropriation to be submitted to the governing body.... The governing body must appropriate the amount certified by the Board of School Estimate up to a maximum of 1 ½% of the assessed valuation of property in the municipality....
 

 “In connection with capital projects, the Board of School Estimate also determines the amount necessary, and the governing body, subject to certain limitations, is required to appropriate the amount so certified either from its general funds or through the issuance of municipal bonds.... A bond issue for school purposes must be authorized by ordinance adopted by the board of commissioners of the city and, under certain circumstances, by the voters of the municipality.
 

 “All moneys necessary for school purposes must be provided by the city through local taxation.
 

 “As a consequence, there are sufficient areas of mutual relationship between the two bodies to demonstrate that the activities of the Board of Education of Union City, including cost, efficiency and performance of the school system, are a matter of legitimate interest to the governing body of the city so as to justify the inquiry by its investigating committee.
 
 See
 
 dissenting opinion in
 
 Botkin v. Mayor, etc., Westwood,
 
 52 N.J.Super. 416, 437, 145 A.2d 618 (App.Div.1958);
 
 Hackensack Bd. of Education v. Hackensack,
 
 6[3] NJ.Super. 560, 165 A.2d 33 (App.Div.1960). The rationale articulated in
 
 Board of Trustees of Free Public Library v. City of Union City,
 
 [112 N.J.Super. 484, 271 A.2d 728 (Ch.Div.1970) ] is equally applicable and dispositive of the plaintiffs’ contentions herein.
 

 
 *1283
 
 “The subject is manifestly within the jurisdiction of the governing body, in the sense of the latter’s legitimate interest in the business of the Board of Education for the purpose of performing its statutory functions vis-a-vis the school system. Consequently, the inquiry into the operation of the Board of Education is properly within the jurisdiction of the investigating committee, and the Board’s architect and employee, Lugosch, is subject to its subpoena.”
 

 112 N.J.Super. at 495-96, 271 A.2d at 734.
 

 Similarly, in this case, the Council appoints the members of the Board. § 16-11-3. Section 16-11-12, Ala.Code 1975, provides that “any action brought upon [a city board of education’s contracts] and for the recovery and protection of money and property belonging to and used by the public schools, or for damages, shall be brought by and in the name of the city.” That provision indicates “that city boards of education are closely related to the city governing body.”
 
 State ex rel. McQueen v. Brandon,
 
 244 Ala. 62, 66, 12 So.2d 319, 322 (1943) (addressing Ala.Code 1940, Title 52, § 161, and Ala. School Code 1927, § 201, predecessors to § 16-11-12). If the income of a city board of education is insufficient, that board “shall petition the city council ... to call an election for the issuance of bonds on the credit of the city” to provide sufficient funding for the board’s schools. § 16-11-19. The Board’s verified complaint stated that, “for many years, previous ... Councils have given the [Board’s schools] appropriations from city funds to assist in the operation of the public school system.”
 

 Furthermore, the record on appeal suggests that the Board and the Council have or had an agreement allowing the Board to use a stadium owned by the City. The record contains a proposed lease agreement concerning the stadium that was sent from the Board’s superintendent to a Council member. The Board’s previous use of the stadium is the subject of several of the Council’s requests for information and documents.
 

 “Investigation in itself is an important and valuable tool for the functioning of government. In the absence of a clear showing of bad faith, such a power should be construed liberally to permit a broad scope of inquiry to achieve the legitimate ends of the investigation.”
 
 Board of Trustees of Free Public Library v. Union City,
 
 112 N.J.Super. 484, 490, 271 A.2d 728, 731 (Ch.Div.1970). The Council has a legitimate interest in the activities of the Board. Although the Council and the Board are separate entities, they interrelate in several ways. Therefore, the Board’s activities are “municipal affairs” pursuant to § 9.03 and, thus, may properly be investigated by the Council under that section. Accordingly, we reverse the trial court’s judgment insofar as it permanently enjoined the Council from exercising its subpoena power over the Board.
 

 The Council filed a motion to strike various parts of the Board’s brief on the grounds that those parts are either factually incorrect, unsupported by the record, or irrelevant to the issues on appeal. We deny the Council’s motion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The complaint also sought to prevent the Council from attempting to remove members of the Board. In part, the permanent injunction entered by the trial court enjoined the Council from attempting to remove any member of the Board. That part of the injunction is not an issue on appeal.