*302 OPINION OF THE COURT
Peter M. Leavitt, J.
In January 2000, respondent, City Council of the City of Mount Vernon (hereafter the Council), adopted a resolution rezoning a 14.55-acre site (hereafter the Site), situated near the boundary between respondent, City of Mount Vernon, and the Town and Village of Pelham, the Village of Pelham Manor and Pelham Union Free School District. Allegedly, the change in zoning was a necessary step in the development of a large, multi-tenant retail shopping center, commonly described as the Sanford Boulevard Redevelopment Project, which had been proposed for the Site and had been under consideration for some years. In this special proceeding Petitioner seeks of this court an order “setting aside, reversing and annulling” the Council’s resolution.
Petitioner describes itself as, “an unincorporated entity comprised of the petitioners Village of Pelham, Town of Pelham, Village of Pelham Manor and the Pelham Union Free School District” (verified petition, at 1, para 1 [emphasis added]). Respondents plead, inter alia, that the petition must be dismissed as the Petitioner “entity” (hereafter Petitioner) lacks standing. Actually, these four putative “petitioners” are more accurately described as members of the Petitioner “entity” which is, in fact, the only entity in whose name this proceeding was instituted. The mere fact that said Villages, Town and School District are often referred to collectively in the petition as “petitioners” does not make them parties, per se.
Neither a village nor a town has the capacity to institute a legal proceeding except upon a resolution of its legislative body (see, Town Law § 65 [1]; Village Law § 4-400 [1] [d]; Town of Thompson v Alieva, 76 AD2d 1022 [3d Dept 1980]), and a school district lacks such capacity except upon a resolution of its board of trustees or board of education (see, Education Law § 1604 [30]; § 3811 [1]). Moreover, the grant of such legislative authority should be alleged in the pleading to establish capacity. (See, e.g., Matter of Buffalo Softball League, 135 Misc 2d 973 [Sup Ct, Erie County 1987].) No such allegations are made in the petition — the only affirmatory paper submitted by Petitioner— nor is there any evidence to be found anywhere in the record that the Village Boards of the Villages of Pelham or Pelham Manor, the Town Board of the Town of Pelham or the trustees of the Pelham Union Free School District, ever adopted a resolution authorizing the institution of this proceeding. None of *303 them, therefore, is a party to this proceeding in its own name and right.*
Furthermore, in the arguments concerning the standing issue advanced in its memoranda of law, the Petitioner "entity" consistently contends that it has standing as an association based in part upon the standing that each of its members would have. Said "entity" does not argue that any of its members is also a party and, therefore, that the question of its own vicarious standing is immaterial-as, of course, such question would be if this were the case. Instead, Petitioner contends that whatever standing it enjoys herein is derived entirely from that of one or more of its individual members.
The appropriateness of, if not necessity for, so-called “associational” or “organizational” standing in actions and proceedings involving land use and zoning was first articulated by the Court of Appeals in its seminal decision in Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1 [1974]). The Court sanctioned what it described as this “broader rule of standing” (36 NY2d, at 6), because it was “troubled by the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits” (id., at 6). In order to establish standing under this doctrine an association must show in its pleading that: one or more of its members would themselves have standing; the interests sought to be protected by the proceeding are germane to the association’s purpose; and the participation of none of the members is necessary to the relief requested. (Matter of Dental Socy. v Carey, 61 NY2d 330, 333-335 [1984].)
Three of Petitioner’s four members would have standing in their own right to bring this proceeding under section 277.71 of the Westchester County Administrative Code (hereafter the Code) (Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178 [1973]); the Pelham Union Free School District would not. Section 277.71 requires “[e]ach city, village or town in the county” to give notice of any hearing scheduled on certain proposed actions to “any abutting municipality in the county.” Standing, to seek judicial review of an act which is contrary to the position taken by such an “abutting municipal *304 ity,” is statutorily bestowed upon such an “abutting municipality” which had made its position known at a hearing on the proposal. Nowhere in the Code is the term “municipality” — as in “abutting municipality” — defined. Certainly, an abutting city, village or town falls within this term since, within section 277.71 itself, “[e]ach city, village or town” which is required to give notice is also described as “said municipality” (emphasis added). But, of course, the Pelham Union Free School District is neither a city, village nor town. Nor can authority for the inclusion of a school district be found outside the Code.
Section 277.71 of the Code is a “special law.” (See, Bloom v Town Bd., 80 AD2d 823, 824 [2d Dept 1981] [construing section 451, the predecessor to section 277.71, of the Code and citing section 2 (12) of the Municipal Home Rule Law].) Pursuant to Municipal Home Rule Law § 2 (12), a “special law” is:
“A state statute which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages.”
Ipso facto, a “special law” does not apply to school districts. Moreover, of the myriad State statutes dealing with local and regional planning, and land use regulation, none include school districts among the cities, towns, villages and counties which constitute “municipalities.” (See, e.g., General City Law § 20-g [3] [a] [“Intermunicipal cooperation in comprehensive planning and land use regulation”]; General Municipal Law § 2 [defining “municipal corporation”]; General Municipal Law § 239-b [3] [defining “municipality”]; General Municipal Law § 239-h [2] [“Regional planning councils”].) Perhaps because, unlike school districts, such “municipalities” have planning and zoning powers concerning property within their own borders.
There is authority for the proposition that an abutting municipality which asserts its standing under the Code — i.e., all of Petitioner’s members except the School District — may seek judicial review of the act complained of for an alleged violation of article 8 of the Environmental Conservation Law (also known as the State Environmental Quality Review Act and referred to hereafter as SEQRA), as well. (See, Matter of City of Rye v Korff, 249 AD2d 470 [2d Dept 1998].) So the court will not address the issue of whether the Villages of Pelham or Pelham Manor, or the Town of Pelham (hereafter the member municipalities) would have standing under SEQRA but for the Code. The Pelham Union Free School District does not.
A governmental subdivision may have standing under SE-QRA but, absent some other basis therefor, its entitlement *305 thereto is judged by the same criteria as apply to individual owners of private property. Petitioner has not demonstrated that the School District would suffer any injury in fact different from that suffered by the public at large, or is the owner of real property in such close proximity to the Site as to create the inference thereof. Nor is this an instance where the determination at issue purports to effect the use or regulation of property located within the geographical boundaries of the School District. At most the allegations in the petition might demonstrate a potential for injury to the residents of, and owners of private property located on or near the Mount Vernon border in, the School District.
But governmental subdivisions lack the capacity to commence an action in pursuit of the individual interests of their citizenry. (See, Incorporated Vil. of Northport v Town of Huntington, 199 AD2d 242 [2d Dept 1993]; Matter of Esopus Prop. Holders v Potter, 60 AD2d 948 [3d Dept 1978]; Town of Remsen v Albright, 82 Misc 2d 470, 471 [Sup Ct, Oneida County 1974].) Consequently, the School District does not have such a stake in the outcome as is required to establish its standing, under SEQRA alone, to seek judicial review for an alleged injury to said individual interests. (Cf., Community Bd. 7 v Schaffer, 84 NY2d 148, 154-156 [1994].)
Petitioner argues that it is an appropriate representative to assert organizational standing in this proceeding because the interests which it pursues herein are germane to its purpose. While it is not alleged in the petition, Petitioner contends that such purpose, “is to protect its members from the harms that would result from the zoning amendment at issue in this action” (supplemental mem of law in support of Petitioners’ standing, at 10). But Petitioner has not demonstrated what, if any, harm would be visited upon its member municipalities. Moreover, since the only injuries, or “harms,” which are even arguably demonstrated in the pleadings would be suffered by residents of, and the owners of private property within, the member municipalities, the only “interests” actually pursued in this proceeding are those of such individuals rather than of the municipalities themselves. Yet, there is no indication that membership in the Pelham Council of Governing Boards is, or ever was, “open to all residents and property owners in the relevant neighborhood,” so that it does not, “represent * * * that segment of the public which stands to be most severely affected” — a factor which should also be considered. (Matter of Douglaston Civic Assn. v Galvin, supra, at 7.)
*306 Also, according to Petitioner’s counsel — though here again there are no allegations of fact in support — Petitioner was formed at or following “a meeting of trustees from each of its members” in July 1999. (See, supplemental mem of law in support of Petitioners’ standing, at 10-11.) But Petitioner does not contend — much less aver — that the decision to form and join this “unincorporated entity” was made by resolution of the various Village, Town and School Boards from which said trustees came; or, for that matter, that the number of trustees which purportedly decided that their respective governmental subdivisions would do so constituted a legally binding majority on each board.
Governmental subdivisions are artificial creatures of statute-whose powers and capacities are narrowly restricted by the statutes, or statutory provisions, pursuant to which they were created. (See, Caruso v State of New York, 188 AD2d 874 [3d Dept 1992].) Neither villages, towns nor school districts are statutorily empowered to institute legal proceedings except upon a resolution of their boards (see, discussion supra), and the individual trustees of such boards may not do so in the name of the governmental bodies which they serve (see, Incorporated Vil. of Northport v Town of Huntington, supra; Village of Mt. Morris v Pavilion Natural Gas Co., 183 NYS 792 [Sup Ct, Monroe County 1920], affd 196 App Div 918 [4th Dept 1921]). It follows, therefore, that a decision made by one or more trustees — and not confirmed by resolution of the board — to form and join an “unincorporated entity” in the name of a governmental subdivision, cannot constitute legal authority for said entity to institute a legal proceeding in behalf of the governmental subdivision.
Petitioner has, therefore, failed to demonstrate that it, “in fact represents the views of the municipalities and the interests it seeks to protect” (Caruso v State of New York, supra, at 875, citing Douglaston Civic Assn. v Galvin, supra). However, even assuming, arguendo, that Petitioner had satisfied the tripartite test set out in Dental Socy. (supra), it would not be entitled to assert organizational standing in the context of this action. “Organizational” standing represents an expansion of the traditional doctrine based upon relaxation, if not outright abandonment, of the precept that only one with a significant stake in the outcome qualifies as a real party in interest in a judicial resolution of the issue presented. The “organization” which asserts standing under this theory has no actual stake in the outcome and often, as here, can hardly be regarded as a *307 “real party” at all. Consequently, organizational standing is not automatically granted merely upon a finding that the Dental Socy. test has been satisfied. (See, e.g., Henry v Isaac, 228 AD2d 558 [2d Dept 1996] [declining to expand organizational standing to suits for personal claims against private parties] .)
Rather, organizational standing is a doctrine of necessity. It is a means of insuring that matters of substantial public interest, and governmental action in particular, will not be insulated from judicial scrutiny. (See, Rudder v Pataki, 93 NY2d 273, 280 [1999]; Matter of Douglaston Civic Assn. v Galvin, supra; see also, Boryszewski v Brydges, 37 NY2d 361, 364 [1975] [expansion of the related, prestatutory, doctrine of “taxpayer standing” because the failure to do so would foreclose judicial scrutiny of legislative action].) It may be granted where an organization — which otherwise satisfies the Dental Socy. test — is an appropriate representative of individuals who are unable to seek judicial review on their own behalf due either to legal incapacity (e.g., minors, incompetents) or practical impossibility (e.g., illness, unfamiliarity with one’s legal rights or the legal process, inadequate financial resources). (See, Mixon v Grinker, 157 AD2d 423 [1st Dept 1990] [noncongregate housing for HIV-infected homeless persons].) In at least one instance use of the doctrine was implicitly sanctioned in an action brought by an association of municipalities. (Caruso v State of New York, supra [organizational standing was, however, denied because plaintiff failed to satisfy the first and second prongs of the Dental Socy. test].) But this court is unaware of any decision of a New York tribunal — and the parties have cited none — addressing the question of organizational standing to raise a land use or zoning issue for an association comprised entirely and exclusively of governmental subdivisions.
In Douglaston Civic Assn. (supra) the Court recognized that individual property owners are often, if not always, at a prohibitive financial disadvantage when faced with the overwhelming resources which a developer can bring to bear in its efforts to effect changes in land use restrictions, which changes might well have a devastating consequence for such individual property owners. “By granting neighborhood and civic associations standing in such situations, the expense can be spread out over a number of property owners, putting them on an economic parity with the developer.” (36 NY2d, at 6-7.) The instant situation is, however, significantly different. Petitioner’s members *308 are not individual property owners, hut governmental subdivisions; and it is not alleged that the members banded together out of financial necessity to achieve economic parity with the developer or respondents.
Indeed, this court can perceive no reason why, if one or more of Petitioner’s member municipalities wished to pursue their interests under SEQRA or section 277.71 of the Code, they could not have done so in their own behalf — i.e., upon resolution of their respective boards. In sum, there is no necessity to expand the doctrine of organizational standing further by granting it to an organization of governmental subdivisions to challenge a determination by a neighboring, nonmember, governmental subdivision concerning land use and zoning within the latter’s own borders. As the Court of Appeals recently said, in another context, in Rudder v Pataki: “this is not a case where to deny standing to [this] plaintiff * * * would insulate government action from judicial scrutiny.” (93 NY2d, supra, at 280 [each of several groups representing social workers denied organizational standing to challenge administrative actions of State agency], citing Boryszewski v Brydges, supra.)
Accordingly, and for all of the foregoing reasons, respondents’ third defense is granted and the petition is dismissed for lack of standing.

 Indeed, serious questions could be raised as to the capacity of the Pelham Council of Governing Boards to institute this proceeding in its own name and right, since it is nowhere alleged that the proceeding is being maintained by its president or treasurer. (See, General Associations Law § 12.) However, as these questions have not been raised, the court will not render a dispositive determination based thereon.