OPINION OF THE COURT
Peter M. Leavitt, J.
In December 1999, respondent City of Mount Vernon Industrial Development Agency (hereafter, IDA) resolved, as lead agency, to adopt a findings statement in connection with the proposed development of a large, multi-tenant retail shopping center on a 14.55-acre site (hereafter, the Site) located in the City of Mount Vernon. The Site is situated near the boundary between Mount Vernon and the Town and Village of Pelham, the Village of Pelham Manor and the Pelham Union Free School District. In this special proceeding petitioner seeks of this court orders: “vacating, annulling, and declaring null and void” IDA’s resolution and “declaring null, void, and improper, the IDA’s lead agency status.”
*446 By decision and order entered November 17, 2000, this court dismissed a special proceeding instituted by this same petitioner in which it had sought an order annulling a resolution of the City Council of the City of Mount Vernon, by which determination the City Council had approved the rezoning of the Site in connection with the said proposed development. (Matter of Pelham Council of Governing Bds. v City of Mount Vernon, 186 Misc 2d 301 [hereafter referred to as the “Rezoning” proceeding].) The ground for dismissal of the petition in the “Rezoning” proceeding was petitioner’s lack of standing. The issue of petitioner’s standing to commence the instant proceeding has also been raised herein as an affirmative defense by IDA and the City of Mount Vernon. Moreover, in its disposition of the “Rezoning” proceeding, the court noted — but did not decide — that, aside from the standing issue, serious questions could have been — but were not — raised as to petitioner’s capacity to institute said proceeding. (See 186 Mise 2d, at 303, n.) Such questions have, however, been raised in this proceeding.
Indeed, petitioner has not established its legal capacity to institute this proceeding. Capacity to present an issue for resolution in a judicial forum is a question of legal status. Unlike a natural person, an “entity” — whether it be called an association, a corporation, a governmental subdivision, or some other appellation — has no legal status beyond that with which it is endowed by express statutory provision or by necessary implication therefrom. (See Community Bd. 7 v Schaffer, 84 NY2d 148 [1994].) Any group of persons or entities may, of course, join together for any lawful common purpose whether or not the resulting “thing” constitutes a creature which has been defined by the Legislature. But, absent such statutory endowment, said “thing” would be without legal status or power — as, for example, to seek judicial redress. The Legislature of this State has created nothing called an “unincorporated entity,” as petitioner describes itself. (See verified petition, at 2, para 6.)
Petitioner’s counsel argues, however, that petitioner had capacity to commence this proceeding as an “unincorporated association,” which is so empowered pursuant to section 12 of the General Associations Law. Yet, according to the verification annexed to the petition, this proceeding is being maintained by “the Chair of the Pelham Council of Governing Boards” not, as the enabling statute prescribes, the president or treasurer. It appears, in fact, that petitioner had no officers *447 designated as president or treasurer; and, indeed, if there had been either a president or a treasurer, only such officer could have commenced this proceeding in petitioner’s behalf. (See Locke Assocs. v Foundation for Support of United Nations, 173 Misc 2d 502, 505 [Civ Ct, NY County 1997].) However,
“[w]here there is no president or treasurer, the court must examine the organization’s structure to determine if the person who commenced the action is an elected or de facto officer performing equivalent functions and responsibilities” (id.).
But petitioner has not provided any information concerning its organizational structure or the functions and responsibilities of its “Chair.” Nevertheless, there is no allegation, nor any other reason to conclude, that the person who purports to maintain this proceeding for petitioner is not, in fact, an officer thereof. Since, therefore, maintenance by the wrong officer — as opposed to one who is neither an officer nor member — would not constitute a jurisdictional defect, and since the court can see no prejudice to respondents as a consequence, petitioner’s lack of capacity is excused. (See Matter of Stephentown Concerned Citizens v Herrick, 223 AD2d 862, 864, n 2 [3d Dept 1996].)
In the “Rezoning” proceeding petitioner described itself as “an unincorporated entity comprised of the petitioners Village of Pelham [etc.].” (“Rezoning” proceeding, verified petition, at 1, para 1 [emphasis added]), though the court found that none of the said members were, in fact, parties thereto. In the instant proceeding petitioner describes itself as “an unincorporated entity comprised of the Village of Pelham, Town of Pelham, Village of Pelham Manor and the Pelham Union Free School District” (verified petition, at 2, para 6), i.e., it is not alleged that any of said members are also petitioners in their own name and right. Nor does petitioner contend that the Pelham Council of Governing Boards would have standing other than that which it allegedly enjoys vicariously from one or more of its individual members.
The appropriateness of, if not necessity for, so-called “associational” or “organizational” standing in actions and proceedings involving land use and zoning was first articulated by the Court of Appeals in its seminal decision in Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1 [1974]). The Court sanctioned what it described as this “broader rule of standing” (36 NY2d, at 6), because it was, “troubled by the apparent *448 readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits” (id.). In order to establish standing under this doctrine an association must show in its pleading that: one or more of its members would themselves have standing; the interests sought to be protected by the proceeding are germane to the association’s purpose; and the participation of none of the members is necessary to the relief requested. (Matter of Dental Socy. v Carey, 61 NY2d 330, 333-335 [1984].)
In the “Rezoning” proceeding this court found that petitioner had satisfied the first prong of the Dental Society test because three of its four members would have had standing in their own right under section 277.71 of the Westchester County Administrative Code. (See Matter of Pelham Council of Governing Bds., supra, 186 Misc 2d, at 303-304.) Since IDA is neither a city, village nor town, however, section 277.71 has no application, and petitioner does not assert standing thereunder, in this proceeding.
But, unlike the “Rezoning” proceeding, petitioner has demonstrated herein that each of its members would suffer an environmental injury in fact different from that suffered by the public at large. Whether or not IDA ultimately determined that the impacts were not actually adverse, or that they had been sufficiently mitigated, the substantial increase in the volume of vehicular traffic to be anticipated from a retail shopping facility of the size contemplated in the proposed development is clearly within the zone of interests which article 8 of the Environmental Conservation Law (also known as the State Environmental Quality Review Act, and referred to hereafter as SEQRA) is intended to protect. Petitioner has averred herein — though it did not do so in the “Rezoning” proceeding — that such increased vehicular traffic will burden the public thoroughfares of the Town of Pelham and the Villages of Pelham and Pelham Manor, and pose risks to the safety of pedestrians who are also students who attend one or more schools within the Pelham Union Free School District. Petitioner has, therefore, satisfied the first prong of the Dental Society test.
Just as in the “Rezoning” proceeding, however, petitioner has failed to satisfy the second prong of said test. Here again, petitioner does not aver, “that the decision to form and join this ‘unincorporated entity’ was made by resolution of the various Village, Town and School Boards” (Matter of Pelham Council of Governing Bds., supra, 186 Misc 2d, at 306), the only means by which they could, lawfully, have done so (id.). *449 The fact* that an undisclosed number of trustees of such Boards “called a meeting” (supp reply mem of law in support of petitioner’s standing, capacity and exhaustion of administrative remedies, at 8) is of absolutely no moment. Unless said trustees had been authorized or empowered by resolution of their respective Boards to do so, or their actions were subsequently ratified by resolutions of the Boards, no decision made at such meeting in any way constituted a determination of any of petitioner’s members or committed said members to any course of action. Thus petitioner has again failed to demonstrate that it, “in fact represents the views of the municipalities and the interests it seeks to protect” (Caruso v State of New York, 188 AD2d 874, 875 [3d Dept 1992], citing Douglaston Civic Assn., supra).
Moreover, petitioner’s protests that to grant it standing serves the interests of judicial economy and efficiency ring hollow, indeed. Even assuming, arguendo, that standing should be granted merely in the service of said interests — and that is definitely not the case (see Matter of Pelham Council of Governing Bds., 186 Misc 2d, at 306-307) — they would not, in fact, be advanced thereby. If each of petitioner’s members had evinced an intent to seek judicial review of IDA’s determination they could certainly have “pool[ed] their resources” (supp reply mem of law in support of petitioner’s standing, capacity and exhaustion of administrative remedies, at 8) and done so in a single proceeding and, if they so desired, been represented by the same counsel, just as they have purportedly done through petitioner herein. At the core of petitioner’s problems in this and the “Rezoning” proceeding, of course, is that there is no evidence that any of its members ever intended to seek judicial review to begin with.
The mere fact that one — whether the one be an entity or a natural person — would have standing to pursue a judicial resolution of an issue does not mean that one can, or should, be compelled to do so. Nor does it mean that the interest upon which one’s standing is founded can be usurped by an organization which purports to, but does not actually, represent one. For all this court is aware from petitioner’s submissions, neither the Village of Pelham, the Town of Pelham, the Village of Pelham Manor nor the Pelham Union Free School District, *450 ever desired, intended or decided either to join the Pelham Council of Governing Boards or to commence any special proceeding in connection with the proposed development at issue herein. Consequently, petitioner derives no more vicarious standing from these governmental subdivisions than it does from those individual owners of private property located near the Site who may well have standing in their own right but have neither joined the Pelham Council nor commenced their own special proceeding.
Nor did IDA somehow — as petitioner suggests — confer upon petitioner, or estop it from contesting, standing because it did not prohibit, or object to, petitioner’s participation, through counsel, in the SEQRA process. The opportunity — whether it be by right or privilege — to be heard in a public forum is not dependent upon the speaker’s ability to establish that he has an actual stake in the outcome of the issue being considered. According to petitioner’s reasoning anyone whose opinion on a proposed project is entertained would thereby have standing to commence a special proceeding to challenge any determination concerning said project. This would constitute an expansion of the concept of standing to a degree which, the court suspects, even petitioner’s members would vehemently oppose.
Finally, and perhaps most importantly, petitioner has still not convinced this court that the doctrine of organizational standing needs to be expanded to permit an association of governmental subdivisions to challenge a determination concerning the use of land located in a neighboring, nonmember, governmental subdivision. (Id., at 306-308.)
Accordingly, and for all of the foregoing reasons, IDA’s fourth and the City of Mount Vernon’s first affirmative defenses are granted and the petition is dismissed for lack of standing.

 Even the characterization of this statement as “fact” requires an assumption on the part of the court. As in the “Rezoning” proceeding, petitioner has submitted no affirmatory papers concerning any aspect of this meeting or the actions of any of the members’ Boards with respect thereto.