Merrimack
No. 2001-370

HOOKSETT CONSERVATION COMMISSION

v.

HOOKSETT ZONING BOARD OF ADJUSTMENT

Argued: June 12, 2002
Reargued: January 14, 2003
Opinion Issued: January 23, 2003

*Baldwin, Callen, Hogan & Kidd, PLLC*, of Concord (*Scott E. Hogan* on the brief and orally), for the plaintiff.

*Drescher & Dokmo, PA*, of Milford (*William R. Drescher* on the brief and orally), for the defendant.

*McNicholas & Willoughby, PA*, of Concord, for the intervenor, filed no brief.

DUGGAN, J. The defendant, Hooksett Zoning Board of Adjustment (ZBA) and the intervenor, Sered Memorial, LLC (Sered), appeal an order of the Superior Court (*McGuire*, J.) denying their motion to dismiss. They argue that the superior court erred in ruling that the plaintiff, the Hooksett Conservation Commission (commission), has standing to appeal a decision of the ZBA to the superior court pursuant to RSA 677:4 (1996 & Supp. 2000) (amended 2000). We reverse.

On July 28, 2000, the commission reviewed an application for site plan approval submitted by Sered to the Hooksett Planning Board (planning board) for a proposed convenience store and retail gasoline sales facility. After reviewing the application, the commission provided a memorandum to the planning board stating its determination that the Hooksett Zoning Ordinance (ordinance) prohibits the use of "automobile service or repair shops" in the proposed location. The planning board subsequently sought an interpretation of the zoning ordinance from the town's code enforcement officer.

On August 4, 2000, the code enforcement officer issued a formal zoning interpretation in which he concluded that the proposed use on the property was permitted under the ordinance. The commission appealed the formal zoning interpretation to the ZBA under RSA 676:5 (1996). The ZBA denied the commission's appeal. The commission filed a request for rehearing under RSA 677:2 (1996) (amended 2000), which was denied. The commission then appealed the ZBA's decision to the superior court under RSA 677:4.

The ZBA filed a motion to dismiss, arguing that the commission lacked standing under RSA 677:4 to contest the ZBA's decision. The superior court denied the ZBA's motion to dismiss and its subsequent motion to reconsider. The Superior Court (*Mangones*, J.) then held a hearing on the merits. Following the hearing, the superior court issued an order vacating

the ZBA's decision on the ground that the proposed facility was prohibited by the ordinance. This appeal followed.

The issue on appeal is whether the commission has standing under RSA 677:4 to appeal the ZBA's decision to the superior court. As the determination of whether the commission has standing to appeal a ZBA decision is a matter of statutory interpretation, we turn first to the language in the statute itself. *See Silva v. Botsch*, 120 N.H. 600, 601 (1980). In conducting our analysis, "we will focus on the statute as a whole, not on isolated words or phrases." *Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 471 (1996). Although we "will not look beyond the language of a statute to determine legislative intent if the statute's language is clear and unambiguous," *State v. Rothe*, 142 N.H. 483, 485 (1997), "[w]here the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *K & J Assoc. v. City of Lebanon*, 142 N.H. 331, 333 (1997). "[O]ur goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Appeal of N.H. Dep't of Transportation*, 143 N.H. 358, 360 (1999) (quotation and brackets omitted).

The procedure by which an adverse decision by a code enforcement officer may be appealed is as follows. First, RSA 676:5, I, permits "any person aggrieved or . . . any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer" to appeal the code enforcement officer's decision to the ZBA. Within thirty days after an order or decision of the ZBA, "the selectmen, any party to the action or proceedings, or any person directly affected thereby may apply for a rehearing." RSA 677:2. An appeal from the ZBA's decision on the motion for rehearing may then be brought in the superior court within thirty days by "[a]ny person aggrieved" by the order or decision of the ZBA. RSA 677:4. The statute defines "person aggrieved" as "any party entitled to request a rehearing under RSA 677:2." *Id.*

The ZBA does not dispute that the commission had standing to bring its original appeal to the ZBA pursuant to RSA 676:5. The ZBA maintains, however, that the commission lacks standing to appeal the decision of the ZBA beyond this point. The ZBA argues that under RSA 677:2, only the selectmen may request a rehearing and, therefore, the commission had neither standing to request a rehearing under RSA 677:2 nor standing to bring an appeal to superior court under RSA 677:4.

As standing to appeal a ZBA decision to the superior court hinges upon whether the appellant may request a rehearing under RSA 677:2, we first consider whether the commission has the right to apply for a rehearing. RSA 677:2 states that

[w]ithin 30 days after any order or decision of the zoning board of adjustment, or any decision of the local legislative body or a board of appeals in regard to its zoning, the *selectmen*, any party to the action or proceedings, or any person directly affected thereby may apply for a rehearing in respect to any matter determined in the action or proceeding, or covered or included in the order . . . ."

(Emphasis added). The commission argues that although RSA 677:2 specifically authorizes the selectmen to request a rehearing, it nonetheless has standing to file a motion for rehearing because it is the party that initiated the appeal to the ZBA and is, therefore, a "party to the action or proceedings." RSA 677:2. The commission contends that any other interpretation of RSA 677:2 would lead to an absurd result, because "the party which initiated the original appeal to the ZBA . . . would not be a 'party' which could request a rehearing of the ZBA's decision."

Although the commission initially appealed the code enforcement officer's interpretation of the zoning ordinance, the mere fact that it instituted the proceedings does not make it a party *per se. Cf. Pelham Council of Gov. Bds. v. Mt. Vernon*, 717 N.Y.S.2d 866, 867 (Sup. Ct. 2000). In fact, a review of the plain language and the structure of the statute suggests that the legislature did not intend to grant authority to the commission to apply for a rehearing.

RSA 676:5 grants authority to any officer, department, board, or bureau of the municipality to *initiate* an appeal to the ZBA. The fact that no comparable language exists in RSA 677:4 indicates that the legislature only intended to authorize the selectmen to request a rehearing and that the commission would not be considered a "party to the action or proceedings." Nonetheless, as the statute does not define who is considered a "party to the action or proceedings," RSA 677:2, we turn to the legislative history to assist us in determining whether the legislature could have intended to include the "officer, department, board, or bureau of the municipality affected by any decision of the administrative officer" that initiated an appeal to the ZBA under RSA 676:5, I, as a "party to the action or proceedings."

The ZBA argues that the legislative history of RSA 677:2 and RSA 677:4 supports its conclusion that the legislature only intended to authorize the selectmen to file a request for rehearing or an appeal to the superior court from a decision of the ZBA, and that the amendments to these statutes reveal that this requirement is "neither an oversight or a tolerated ambiguity." While the legislative history reveals that at one time, all municipal boards affected by the decision of the municipal officer had

standing to appeal a ZBA decision to the superior court, *see* RL 51:64 (1942), we are not persuaded that the subsequent amendments support the ZBA's assertion that the legislature intended to only authorize the selectmen to file a request for rehearing and, thus, a subsequent appeal to the superior court.

At one time, RL 51:64 specifically permitted "[a]ny person aggrieved . . . or any taxpayer, or any officer, department, board or bureau of the municipality" to appeal a ZBA decision to the superior court. *Id.* In 1949, RL chapter 51 was amended and the legislature introduced the requirement that parties must first file a request for a rehearing prior to appealing to the superior court. *See* Laws 1949, 278:1, :2. Under the amended statute, municipal boards were not granted express authority to file a request for a rehearing. *See* Laws 1949, 278:1. Moreover, municipal boards were no longer granted express authority to appeal decisions to the superior court. *See* Laws 1949, 278:2. Instead, the statute provided that "any *party* to the action or proceedings, or any person directly affected thereby may apply for a rehearing." Laws 1949, 278:1 (emphasis added). The legislature also added RL 51:65-d, which defined a "party" as "[a]ny person whose rights may be directly affected by said appeal . . . ." Laws 1949, 278:2. In addition to the above changes, the legislature eliminated the express authority for municipal boards to file an appeal to the superior court, and instead included RL 51:65-b, which provided that "[w]ithin thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the decision on such rehearing, the applicant may appeal by petition to the superior court." *Id.* The ZBA acknowledges that by removing municipal boards from the list of parties expressly entitled to file an appeal to superior court, the legislature created an ambiguity because municipal boards could still be included, inferentially, in the term "party to the action or proceedings, or any person directly affected thereby." Laws 1949, 278:1. The ZBA argues, however, that this inherent ambiguity was resolved in 1973, when the legislature amended RSA 31:74 (1970) (formerly RL 51:64) by explicitly adding "selectmen" to the list of parties permitted to file a request for rehearing. *See* Laws 1973, 341:1. The ZBA argues that this subsequent addition makes evident that *only* the selectmen were intended to be authorized as a party entitled to file a request for rehearing.

An examination of the legislative history, however, reveals that it is unclear whether the legislature intended to preclude municipal boards — other than the selectmen — from filing a request for rehearing. For example, in reporting the bill that would ultimately become RSA 31:74, Representative Whipple explained that it was necessary to add the selectmen to the list of those who may apply to the ZBA for a rehearing

because the "[p]resent statute permits only the persons directly affected by the ruling to request such re-hearing." N.H.H.R. JOUR. 1472 (1973). In contrast, the remarks provided by Senator Poulsen in reporting this bill seem to convey that the selectmen and other municipal boards may have already had the authority, as persons or parties, to appeal a decision of the ZBA. N.H.S. JOUR. 2016 (1973). Senator Poulsen explained that "[t]his bill gives the right to selectmen to appeal a rehearing before the zoning board of adjustment by the board of selectmen. I believe that they already have this right but it is not spelled out." *Id.* We are not persuaded that the legislative history provides sufficient guidance to determine the legislature's intent.

██ After considering the policy sought to be advanced by the statutory scheme, however, *see Appeal of N.H. Dep't of Transportation*, 143 N.H. at 360, we are persuaded that the legislature did not intend for all municipal boards to have standing to move for rehearing and to appeal the ZBA's decision to the superior court. The policy considerations stem from the fact that there are undoubtedly many instances when a municipal board may disagree with a ZBA's interpretation of a zoning ordinance. If municipal boards were permitted to appeal in every such instance, "the prompt and orderly review of land use applications ... would essentially grind to a halt." *Wash. Tp. Zon. Bd. of Adjustment v. Planning Bd.*, 525 A.2d 331, 335 (N.J. Super. Ct. App. Div. 1987). Suits by different municipal boards could cause considerable delays and thus unfairly victimize property owners, particularly when no party directly affected by the action such as abutters has seen fit to challenge the application. *See id.* at 335-36. Public funds will also be drawn upon to pay the legal fees of both contestants, even though the public's interest will not necessarily be served by the litigation. *See id.* at 336. Finally, "[t]o permit contests among governmental units ... is to invite confusion in government and a diversion of public funds from the purposes for which they were entrusted.... Practical politics being what they are, one can readily foresee lively wrangling among governmental units if each may mount against the other assaults." *Id.* at 336. Such "wrangling among governmental units" should be minimized. In light of the above policy considerations, we conclude that the legislature did not intend to grant standing to request a rehearing to all municipal boards that may initiate an appeal under RSA 676:5. We are cognizant, however, that our task is to construe the statute in accordance with the legislative intent. Thus, if the legislature believes that unintended consequences have beset its statutory language, we would respectfully urge it to clarify the statute to remove any uncertainty. *See Appeal of Int'l Bhd. of Police Officers*, 148 N.H. 194, 196 (2002).

■ The commission further argues that it should be considered a "party to the action or proceedings" because it has a statutory duty to protect Hooksett's natural resources and watersheds. We disagree. Any duty the commission has to protect Hooksett's natural resources and watersheds provides it the authority to appeal only the code enforcement officer's decision to the ZBA under RSA 676:5. *Cf. Planning Bd. v. Zoning Bd. of Appeals*, 695 N.E.2d 650, 652 (Mass. 1998) (granting standing only to municipal officers or boards that have duties to perform in relation to the building code or zoning). Nothing in the statute, however, provides the commission with the authority to request a rehearing or to file an appeal to the superior court on the basis that it believes the ZBA's decision will jeopardize the town's natural resources and watersheds. *Cf.* RSA 482-A:10, XVIII (2001) (expressly providing the commission the right to request a rehearing and appeal a decision of the New Hampshire Department of Environmental Services to the superior court regarding permits issued pursuant to its wetlands permitting program). We conclude that the commission lacked standing to request a rehearing or to appeal to superior court. Hence, the superior court erred by denying the motion to dismiss.

*Reversed.*

BROCK, C.J., and BRODERICK, J., concurred; DALIANIS, J., with whom NADEAU, J., joined, dissented.

DALIANIS, J., dissenting. I believe that the Hooksett Conservation Commission (commission) had standing to contest the decision of the Hooksett Zoning Board of Adjustment (ZBA). Thus, I respectfully dissent.

"The starting point in any statutory interpretation case is the language of the statute itself." *Crowley v. Frazier*, 147 N.H. 387, 389 (2001). RSA 677:4 (1996 & Supp. 2000) (amended 2000) provides that any person "aggrieved by any order or decision of the zoning board of adjustment" may appeal a zoning board of adjustment decision to the superior court. RSA 677:4 defines a "person aggrieved" to include "any party entitled to request a rehearing under RSA 677:2." RSA 677:2 (1996) (amended 2000) permits "any party to the action or proceedings" to request rehearing before the zoning board of adjustment. As the commission initiated the proceedings before the ZBA, it seems evident to me that the commission is a "party" to them. Accordingly, the commission was entitled to appeal the ZBA's decision to the superior court. In light of the statute's clarity, there is no need to look beyond its plain meaning to discern legislative intent. *See In re Baby Girl P.*, 147 N.H. 772, 775 (2002).

NADEAU, J., joins in the dissent.