OPINION OF THE COURT
Bernard J. Malone, Jr., J.
This is a CPLR article 78 proceeding brought by the petitioners for a judgment compelling the respondent New York Temporary State Commission on Lobbying to adopt rules governing adjudicatory proceedings that it conducts, specifically, to compel it to follow the mandates of section 301 (3) of the State Administrative Procedure Act, directing the Commission to provide the petitioners with a copy of those rules prior to compelling them to attend an adjudicatory hearing and declaring that the determination by the Commission that the petitioners knowingly and wilfully failed to file a client semiannual report for January through June 2003 is null and void because that determination was made in violation of the State Administrative Procedure Act.
The Lobbying Act was reenacted in New York in 1999 (Legislative Law § 1-a et seq., added by L 1999, ch 2 [Lobbying Act]) to gather and disclose information about who was attempting to influence the passage of any statute, rule, local law or ordinance by the Legislature, a state agency, the Governor or a municipality (Lobbying Act § 1-c [c]). This legislation created *919 the Commission which is composed of six members[1] and also creates the position of executive director as the chief administrative officer (Lobbying Act § 1-d [a], [b]). Respondent David Grandeau is the current executive director. The statutory duties of the Commission are to enforce and administer all provisions of the Lobbying Act (Lobbying Act § 1-d [c]). The heart of the Lobbying Act is the requirement that lobbyists register annually and file reports of their activities and finances (Lobbying Act § 1-e). The Commission has the authority to conduct investigations, administer oaths and issue subpoenas of persons and documents (Lobbying Act § 1-d [c]). The Commission is empowered to conduct random audits, hold public or private hearings, prepare forms for reports and lobbying statements, issue advisory opinions and must submit an annual report to the Governor and the Legislature (Lobbying Act § 1-d [c] [2-a], [3], [4], [6], [7]). The Commission is required to gather and disclose information regarding who is attempting to influence legislation and how much money or services have been expended in that effort (Lobbying Act § 1-a). The Commission has a duty to “conduct any investigation necessary to carry out the provisions of [the Lobbying Act]” (Lobbying Act § 1-d [c] [2]).
Section 1-n (a) (i) of the Lobbying Act makes it a misdemeanor for any person or entity to knowingly and wilfully fail to timely file a report or to file a report containing false information. Central to this litigation are subdivisions (b) and (c) of section 1-n of the Lobbying Act which provide in pertinent part as follows:
“(b) A lobbyist, public corporation, or client who knowingly and wilfully fails to file a statement or report within the time required for the filing of such report or knowingly and wilfully violates section one-m of this article shall be subject to a civil penalty, in an amount not to exceed twenty-five thousand dollars, to be assessed by the commission.
Such assessment may only be imposed after the commission sends by certified and first-class mail written notice of the intent to assess a penalty and the basis for the penalty. The amount of such assessment shall be determined only after a hearing *920 at which the party shall he entitled to appear, present evidence and be heard. Such assessment may be recovered in an action brought by the attorney general.
“(c) A lobbyist, public corporation, or client who knowingly and wilfully files a false statement or report shall be subject to a civil penalty, in an amount not to exceed fifty thousand dollars, to be assessed by the commission. Such assessment may only be imposed after the commission sends by certified and first-class mail written notice of the intent to assess a penalty and the basis for the penalty.
The amount of such assessment shall be determined only after a hearing at which the party shall be entitled to appear, present evidence, and be heard.
Such assessment may be recovered in an action brought by the attorney general.”
During May 2003 petitioner Coalition for Fairness was formed as an unincorporated association of persons and entities who sought to hold a rally to protest the 1973 Rockefeller drug laws. It appears that members of the Coalition included Andrew Cuomo, Thomas Golisano, Russell Simmons, Dr. Benjamin Chavis, Hip Hop Summit Action Network, Mothers of New York’s Disappeared and the Hip Hop Research and Education Fund and that, at a meeting held in New York City in May 2003, Dr. Chavis assumed the nonsalaried position of volunteer coordinator of the Coalition. The Commission contends that in the spring of 2003 it obtained information which led it to believe that members of the Coalition were engaging in lobbying activities and it began an investigation and sent “official inquiries” to various members of the Coalition seeking to induce them to register as lobbyists under the Lobbying Act. Dr. Chavis filed a statement of registration with the Commission on behalf of the Coalition. On January 26, 2004, respondent Grandeau sent a letter to Dr. Chavis stating as follows:
“Dear Mr. Chavis:
“This is to notify you that the New York Temporary State Commission on Lobbying has scheduled a hearing on February 25, 2004, at 12:00 p.m., in its offices on the 17th Floor, Agency Building 2, Suite 1701, Empire State Plaza, Albany, New York, to determine whether a civil penalty should be assessed against you, and, if so, the amount thereof, for failure to timely file the 2003 May/June Bimonthly *921 Report.
“This action is being taken in accordance with Section 1-n (b) of the Lobbying Act (Chapter 2 of the Laws of 1999, as most recently amended by Chapter 32, Laws of 2003).
“At the time of the hearing, you will be entitled to appear and be heard on this matter and may have counsel present to represent you.”
In anticipation of the hearing, the attorney for the petitioners wrote to the chairman of the Commission requesting that the commissioners adopt and disseminate procedural rules for the conduct of the hearings held by the Commission. Receiving no response petitioners’ counsel again wrote to the chairman of the Commission inquiring about the procedural guidelines for the hearing. Executive Director Grandeau responded by a letter dated February 6, 2004 in which he stated that the Commission would follow its long-established procedures at the hearing. By letter dated February 10, 2004, Mr. Grandeau further advised that the Commission’s civil penalty hearings were held pursuant to article 7 of the Public Officers Law. Counsel for the petitioners responded by letter dated February 12, 2004 in which he stated that article 7 of the Public Officers Law, entitled “Open Meetings Law,” did not provide any procedures for how an adjudicatory hearing should be conducted. On February 12, 2004, Executive Director Grandeau responded that the Commission was not an agency as defined in the State Administrative Procedure Act and that it did not have to follow the procedures set forth in the State Administrative Procedure Act. Mr. Grandeau cited a 1978 opinion of the Attorney General that stated that the Commission was not subject to the State Administrative Procedure Act because it did not have either rule-making power or the ability to make final decisions in adjudicatory proceedings (1978 Ops Atty Gen 63). Several days later this proceeding was instituted by petitioners by the filing of an order to show cause and petition.
On April 8, 2004, the Commission adopted new guidelines for the Lobbying Act and published them on its Web site. The guidelines include hearing procedures that call for written notice to the offender of reasonable cause to believe that a violation of the Lobbying Act has occurred and provide for a hearing upon the charges. The guidelines also provide for a written record of the hearing, the right to appear with counsel and the right to present evidence and cross-examine witnesses. It is the *922 position of the Commission that these new guidelines cure any due process deficiencies of subdivisions (b) and (c) of section 1-n of the Lobbying Act.
Prior to addressing the merits, the court will address the respondents’ contention that the Coalition lacks standing to maintain this proceeding. The Coalition is an unincorporated association and section 12 of the General Associations Law provides that any action or proceeding brought on behalf of an unincorporated association shall be maintained by the association’s president or treasurer. The respondents contend that neither the president nor treasurer of the Coalition is named as a petitioner in this proceeding, thereby depriving the Coalition of standing. The record before the court establishes that the Coalition does not have a president or treasurer and that Dr. Chavis, as administrative coordinator of the Coalition, is the de facto officer performing equivalent functions and responsibilities. The law is settled that when an unincorporated association has no president or treasurer, the de facto officer performing the equivalent functions and responsibilities of those positions has the capacity to sue on the association’s behalf (Matter of Pelham Council of Governing Bds. v City of Mount Vernon Indus. Dev. Agency, 187 Misc 2d 444 [2001]; Matter of Pasch [Chemoleum Corp.], 26 Mise 2d 918 [1960], affd 13 AD2d 470 [1961]). Consequently, although the Coalition itself is not a proper petitioner, Dr. Chavis has the standing to pursue this proceeding in a representative capacity on the Coalition’s behalf. The respondents also concede that since Dr. Chavis is subject to a potential fine and criminal sanctions he has standing to pursue this litigation in his individual capacity.
The next issue for the court is whether the Commission is an “agency” as defined in State Administrative Procedure Act § 102 (1). Section 102 (1) sets forth the following definition:
“ ‘Agency’ means any department, board, bureau, commission, division, office, council, committee or officer of the state, or a public benefit corporation or public authority at least one of whose members is appointed by the governor, authorized by law to make rules or to make final decisions in adjudicatory proceedings but shall not include the governor, agencies in the legislative and judicial branches, agencies created by interstate compact or international agreement, the division of military and naval affairs . . . the division of state police, the identifica *923 tion and intelligence unit of the division of criminal justice services, the state insurance fund, the unemployment insurance appeal board, and except for purposes of subdivision one of section two hundred two-d of this chapter, the workers’ compensation board and except for purposes of article two of this chapter, the state division of parole and the department of correctional services.”
In 1978, the Commission requested an opinion from the Attorney General whether it was an “agency” within this statutory definition. The Attorney General issued an opinion (1978 Ops Atty Gen 63) which states that the Commission is not an agency subject to the provisions of the State Administrative Procedure Act. “The opinions of the Attorney-General are persuasive and entitled to consideration by this court” (State of New York v Abortion Info. Agency, 37 AD2d 142, 144 [1971]), although they are not binding on courts (Brooklyn Union Gas Co. v Richy, 123 Misc 2d 802 [1984]). The then executive director of the Commission advised the Attorney General on behalf of the Commission that he believed that the Commission was not subject to the State Administrative Procedure Act because it is a legislative commission and agencies of the Legislature are specifically exempted from the State Administrative Procedure Act. The Attorney General responded that it was not necessary to determine whether the Commission is an agency in the legislative branch because the Commission “is neither authorized to make rules nor to make final decisions in adjudicatory proceedings.” (1978 Ops Atty Gen 63.) To be an “agency” under section 102 (1) of the State Administrative Procedure Act, the involved commission must be “authorized by law to make rules or to make final decisions in adjudicatory proceedings.” The Attorney General reasoned as follows:
“That section 15 of the Lobbying Act authorizes publication by the Temporary Commission of a statement on lobbying regulations setting forth, inter alia, the requirements of the Lobbying Act in a clear and brief manner would not be considered a rule-making activity. Requirements governing regulation of lobbying are set forth explicitly in the Lobbying Act. There is no provision, and there appears to be no need for any such provision, for prescription of rules or regulations by the Temporary Commission for giving the Lobbying Act effect. All that the Temporary Commission is authorized to is *924 sue is material of an explanatory nature. Section 102(2) (b)(iv) of the Act excludes from the definition of ‘Rule’ found in section 102(2) (a) of the Act, which would subject a State agency to the Act’s procedure, ‘forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory.’ In this respect, then, the Temporary Commission enjoys no authority to make rules, and on this count would not be deemed a State agency required to meet the procedures imposed by the Act.
“Section 102 of the Act defines, in relevant part, adjudicatory proceeding to mean ‘any activity which is not a rule making proceeding . . . before an agency ... in which a determination of the legal rights, duties or privileges of name[ ] parties thereto is required by law to be made only on a record and after an opportunity for a hearing.’
“Section 4(c) of the Lobbying Act defines the powers and duties of the Temporary Commission. Nowhere therein is there provision for it to make final decisions in adjudicatory proceedings.
“Section 13(b) of the Lobbying Act provides the Temporary Commission may assess in an amount not to exceed one thousand dollars one who has failed to file required data. Assessment, imposed after written notice of failure to file and expiration of a reasonable period within which to cure the failure, is determined unilaterally by the Temporary Commission. As the law is written, there is no requirement a hearing be held before the Temporary Commission determines one has failed to act as required by law and is thereby subject to assessment. Although determination of assessment is made by the Temporary Commission alone, one so assessed is entitled to a hearing as to the amount of assessment. This hearing to fix the assessment in an amount not to exceed one thousand dollars would not be deemed an adjudicatory proceeding as defined in section 102 of the Act, for determination of whatever duty ow[ ]ing, upon which ultimate amount is subsequently fixed, is made by the Temporary Commission[ ] without hearing. In this respect, then, the Temporary Commission enjoys no authority to make final decisions in adjudicatory proceedings, *925 and on this count would not be deemed a State agency required to meet the procedures imposed by the Act.
“I am of the opinion that the Temporary Commission lacks authority by law to make rules; and, although it is not entirely free from doubt, I am also of the opinion the Temporary Commission has not been granted authority to make final decisions in adjudicatory proceedings. It is my view, therefore, that the Temporary Commission is not included as an agency to which the State Administrative Procedure Act applies.” (1978 Ops Atty Gen 63 [emphasis added].)
It is clear that the Attorney General’s construction of the statute was that the Commission could unilaterally determine that a person or entity was guilty of violating the provisions of the Lobbying Act without giving that person or entity notice and an opportunity to be heard and that the only hearing authorized in section 1-n of the Lobbying Act by the Legislature is a hearing to determine the amount of the penalty, if any, that would be assessed against the violator. This court has closely examined the language of section 1-n (b) and (c) of the Lobbying Act and agrees with the Attorney General’s interpretation that the statute directs the Commission to determine whether a person or entity has knowingly and wilfully violated the Lobbying Act without giving that person or entity notice of the charge and the opportunity for a hearing. The court also agrees that the penalty hearings authorized in section 1-n of the Lobbying Act are not adjudicative hearings as defined in the State Administrative Procedure Act. Accordingly, the Commission is not an “agency” and is therefore not subject to the State Administrative Procedure Act.
Paragraph 48 of the petition[2] urges the court to declare portions of section 1-n of the Lobbying Act unconstitutional in violation of the Due Process Clauses of both the Federal and State Constitutions because they allow the forfeiture of substantial property rights (financial penalties) based upon a unilateral determination of the Commission made without no *926 tice and. the opportunity for a hearing.[3] Respondents counter that the guidelines that the Commission has posted on its Web site remedy any due process defects in the statute. The question then becomes whether a regulation, rule or guideline can save a statute which is unconstitutional on its face. This court’s research has not disclosed a New York precedent ruling upon that question. However, it finds persuasive the holding of Federal District Court Judge Helen J. Frye in the case of Grant v Johnson (757 F Supp 1127, 1134 [1991]) in which she ruled: “A . . . rule does not correct a statutory deficiency. Due process protections must be provided in a statutory scheme.”
Here, the statutory scheme does not provide due process because it allows an alleged lobbyist to be deprived of property upon a determination of guilt made without notice and the opportunity to be heard. Agreeing with the holding in Grant (supra), the guidelines issued by the Commission cannot remedy that statutory defect. Further, the Commission lacked the statutory authority to issue those guidelines because the law is settled that an agency may not “promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language” (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 595 [1982]). The plain language of the challenged statute directs the Commission to determine whether there has been a knowing and wilful violation of the Lobbying Act prior to holding a hearing on penalties. Therefore, the guidelines just issued by the Commission purportedly creating procedures for notice and a hearing upon the issue of whether a lobbyist has knowingly and wilfully violated the Lobbying Act are inconsistent with the statutory language and are a nullity.
To the extent necessary, the court converts this article 78 proceeding to a declaratory judgment action (CPLR 103). The court grants petitioners’ judgment declaring that section 1-n (b) and (c) of the Lobbying Act violates the Due Process Clauses of both the New York State and the United States Constitutions in failing to provide for notice and a hearing prior to the Commission determining whether a person or entity has knowingly and wilfully violated the Lobbying Act.

. The members of the Commission are selected as follows: the Speaker of the Assembly nominates one member, the Minority Leader of the Assembly nominates one member, the Temporary President of the Senate nominates one member, the Minority Leader of the Senate nominates one member and the Governor nominates two members.

. The wherefore clause of the petition does not request declaratory relief on the constitutionality of section 1-n (b) and (c) of the Lobbying Act. However, a pleading will not be dismissed due to a prayer for inappropriate relief as long as some right to recover is demonstrated (Kaminsky v Kahn, 13 AD2d 143, 146 [1961]).

. The United States Supreme Court has held, “at a minimum [due process] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing” (Múlleme v Central Hanover Bank & Trust Co., 339 US 306, 313 [1950]).